574 A.2d 782 (1990)
In re L.A., III, J.A. & D.A., Juveniles.
Nos. 87-039, 89-044.
Supreme Court of Vermont.
March 30, 1990.
*783 Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Martha Csala, Asst. Atty. Gen., and Paul H. Erlbaum, Sp. Asst. Atty. Gen., Waterbury, for plaintiff-appellee.
Michael Rose, St. Albans, for defendant-appellant father.
Martin & Paolini, Barre, for defendant-appellant mother.
Before ALLEN, C.J., and PECK, GIBSON and DOOLEY, JJ.
DOOLEY, Justice.
Appellants, the parents of L.A., III, J.A., and D.A., appeal the findings and orders of the juvenile court adjudging their children to be children in need of care and supervision (CHINS) and transferring legal custody over them to the Commissioner of Social and Rehabilitation Services (SRS) with residual parental rights and responsibilities remaining with the parents. The court later terminated all residual parental rights, and the parents appealed that order. The parents raise six issues on appeal, the first two of which relate to the initial merits and disposition orders and the last four of which relate to the termination of parental rights order. The parents' claims are: (1) the merits adjudication was flawed because there was insufficient evidence before the juvenile court to establish CHINS with respect to D.A. and J.A., and, therefore, all subsequent orders must be vacated; (2) the disposition hearing order must be vacated because the court failed to consider the least restrictive alternative for the disposition of the children; (3) it was reversible error when the court, in the termination proceeding, qualified the guardian ad litem as an expert witness for reasons not admitted into evidence; (4) the court erred in *784 terminating the mother's parental rights because she was not able to resume her parenting duties within a reasonable period of time since this conclusion was not based on clear and convincing evidence; (5) the court failed to give adequate consideration to the father's visitation rights; and (6) the court prematurely terminated the father's parental rights. We affirm.
This case involves the disposition of three children, L.A., III (L.A.), J.A., and D.A., who were born on December 3, 1979, July 14, 1981, and December 29, 1982, respectively. These children first came to the attention of SRS in July of 1986, after two of the boys informed their mother that they had been sexually abused by their father. The mother immediately notified SRS, and together they took steps to protect the children from further abuse. SRS filed a petition in the Windham District Court, pursuant to 33 V.S.A. § 645, alleging that the children were children in need of care and supervision (CHINS), as defined under 33 V.S.A. § 632(a)(12). Additionally, the mother filed a petition for relief from abuse.
A merits hearing was held on August 18, 1986, after which the juvenile court rendered its findings of fact and conclusions of law on the record. The court, finding that the oldest boy, L.A., had been sexually molested by his father, concluded that he was an abused child and was without proper parental care as defined in 33 V.S.A. § 632(a)(12)(A) and (B). The court also found that "[t]here is a very high risk of permanent damage to each of [the children] if they are left in an environment where there is not intervention and control to protect them against further physical violations such as those which we find have been committed against [L.A.]." The court therefore adjudicated all three boys CHINS.
The children were placed in SRS custody pending the disposition hearing. SRS in turn placed D.A. and J.A. with the mother because the father had moved out of the family house after the disclosures of abuse and because the mother had acted in a reasonable manner to protect the children. L.A. remained with his maternal uncle in Massachusetts where he had been placed by his mother earlier in the summer. The mother reached an agreement with SRS that she would not permit any unsupervised contact between the children and the father; nevertheless, she allowed such contact on three separate occasions before the disposition hearing. As a result of these contacts, SRS placed the two younger boys in a foster home on September 2, 1986.
The disposition hearing began on October 3, 1986, and the juvenile court issued its disposition order on December 15, 1986. Although the mother sought the return of her children with conditions to assure their safety and services to help them deal with the abuse, the court rejected her proposal without specifically addressing it. Instead, the court concluded that neither parent was capable of caring for the children at that time. The court stated that the father was "unfit and demonstrably incapable of providing an appropriate home and care for his children," and the mother could not "safely and adequately protect her children from the sexual abuse which their father has committed and could in the future commit against the children." The court transferred legal custody of the children to SRS and left residual parental rights with the mother and father. Additionally, the court approved SRS's plan for services and supervision with the goal of eventual reunification of the family. SRS placed the children in a foster home. Both parents filed a notice of appeal from the disposition order.
Initially, SRS directed its efforts towards reunification of the family. In March of 1988, however, SRS noted the lack of progress towards this objective and changed its goal to termination of parental rights. On May 10, 1988, while the parents' appeal of the disposition order was still pending, SRS filed a "Petition to Terminate Residual Rights." A hearing on SRS's petition commenced on September 26, 1988, and lasted for five days. On December 19, 1988, the court issued extensive findings of fact and conclusions of law stating that neither parent was capable of resuming parental responsibilities within a reasonable time. Therefore, the court terminated *785 the parents' residual rights and transferred custody to SRS without limitation as to adoption. Both parents filed notices of appeal from the termination order. The appeal from the disposition order has been consolidated with the appeal from the termination order.
The parents' first claim is that the juvenile court failed to make adequate merits findings regarding J.A. and D.A. to support its conclusion that they were CHINS and that there was insufficient evidence to support the conclusion. The parents do not appeal the CHINS adjudication with respect to L.A. because he testified that he was sexually abused by his father and the court made specific findings and conclusions to that effect. They argue, however, that there is no evidentiary support for the conclusion that the younger boys were CHINS. SRS counters that this issue is not before this Court because the merits order was not properly appealed. We need not address this contention, however, because we find that the court's findings were sufficient to support its CHINS adjudication and were supported by sufficient evidence.
Several witnesses testified during the CHINS proceeding. The court, however, relied primarily on the testimony of L.A., the only one of the three boys to testify, in which he stated that his father sexually abused him. L.A. also testified that his father touched his sister[1] and brothers in a way that he did not like. He said he saw his father touch each of his siblings and described the touching of the sister in some detail. He further stated that his uncle told him about his father touching D.A. and J.A. Although SRS attempted on several occasions to introduce other evidence pertaining to D.A., the court ruled that this evidence was inadmissible hearsay. Thus, the only evidence that either D.A. or J.A. were abused comes from the statements of L.A.
At the conclusion of the hearing, the court determined that all three boys were CHINS. The court made specific findings of abuse with regard to L.A. These findings were based upon the testimony of both L.A. and his father. The court's findings with respect to J.A. and D.A. were as follows:
These children, each of them ... are children in need of care and supervision. There is a very high risk of permanent damage to each of them if they are left in an environment where there is not intervention and control to protect them against further physical violations such as those which we find have been committed against [L.A.].
Therefore, we adjudicate that these children ... are children in need of supervision and we will award custody of the children to [SRS] with placement at the discretion of [SRS] and until further order of this Court.
The juvenile court may conclude that a child is a CHINS if it finds by a preponderance of the evidence that the child "[h]as been abandoned or abused by his parents," 33 V.S.A. § 632(a)(12)(A), or that the child "[i]s without proper parental care or subsistence, education, medical, or other care necessary for his well-being." 33 V.S.A. § 632(a)(12)(B); In re M.B., 147 Vt. 41, 43, 509 A.2d 1014, 1015-16 (1986).
We have decided a number of recent cases on whether abuse as to one sibling is probative of abuse of another. The most important precedent is in In re D.P., 147 Vt. 26, 30, 510 A.2d 967, 970 (1986), where we said: "[w]hether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case." In D.P., there had been a history of abuse to D.P., and when similar abuse, escalated in seriousness, was practiced on the sibling, the trial court found sufficient cause to terminate parental rights as to D.P. This Court affirmed, stating: "Where serious, life-threatening injuries have been inflicted upon one child, the juvenile court will not be required to wait until further injuries are inflicted *786 upon its sibling, previously also a victim of abuse, in order to conclude that a substantial change in material circumstances has occurred as to that sibling." Id. at 31, 510 A.2d at 970.
More recently, this Court considered In re R.M., 150 Vt. 59, 549 A.2d 1050 (1988), where the parent attacked a CHINS adjudication because the juvenile court considered evidence of parental treatment of a sibling and used it to conclude that R.M. was a CHINS. R.M. relied upon D.P. and concluded that since there was evidence of the abuse of R.M., the additional evidence of the abuse of R.M.'s sibling was admissible as "indicative of a broad pattern of abuse and neglect generally pervasive in this household and clearly relevant to R.M." Id. at 69, 549 A.2d at 1056. This Court held that the juvenile court could rely on the treatment of the sibling in concluding that R.M. was a CHINS.
This case is controlled by R.M. L.A.'s testimony provided sufficient evidence of the abuse of D.A. and J.A. As in R.M., the court found in essence that there was a pattern of abuse and a general inability of the mother to protect any of the children. Although neither the evidence nor the findings contained the same level of specificity of abuse of D.A. and J.A. as of L.A., the situation was sufficiently similar to that in D.P. for the court to conclude that further evidence of abuse to D.A. and J.A. was unnecessary for the court to act "to protect them against further physical violations."[2]
We also believe that the findings here were sufficient. The court relied on L.A.'s testimony that he had been sexually abused by his father and stated that it was acting to protect the other children from "further physical violations." Thus, it is clear that the court accepted L.A.'s testimony that his brothers had also been abused. Although the findings are brief, they "are adequate in view of the circumstances of the case." In re T.D., 149 Vt. 42, 45, 538 A.2d 176, 177 (1987).
The mother next argues that the juvenile court failed to consider her proposal for the disposition of the children and therefore contends that the disposition order is invalid. She proposed that the court return the children to her with conditions to assure their safety from their father and services to help them deal with the father's abuse.
This same issue was considered in In re K.M., 149 Vt. 109, 111-12, 539 A.2d 549, 550 (1987), where we rejected the claim that a court must consider less drastic alternatives to a disposition order which would remove a child from the parents' home. We concluded that a child may be placed outside the parents' home at the dispositional stage if the court finds by convincing proof that the parents are unfit and demonstrably incapable of providing an appropriate home for the child. Id. Once the court makes such a finding, it is not necessary for the court to state its reasons for rejecting any less restrictive alternatives.
In the present case, the court found that neither parent was capable of caring for the children without exposing them to harm. The court stated that although the mother "loves her children very dearly, she is unable to place their best interests above her love for and consortium with her husband." The findings detail how the mother allowed contact between the father and children after the CHINS adjudication, despite her agreement with SRS not to allow such contact to occur. The court found "beyond any reasonable doubt, that, if the children are returned to the full care and custody of their mother, they will be subjected and exposed to the threats, the contacts and the fears of their father." Thus, the court concluded that each parent was incapable of providing an appropriate home for the children. This conclusion is supported *787 by the findings and meets the requirement of R.M.
The parents' final four allegations of error relate to the termination proceeding. Both parents challenge the court's ruling that the children's guardian ad litem was qualified as an expert witness. During the termination proceeding, SRS asked the guardian, over the parents' objection, to assess the parents' progress in working towards the SRS case plan and to give her opinion on whether the parents' parental rights should be terminated. The court allowed the testimony, noting first that it was "technically qualified testimony" and later that the guardian ad litem had "the most experience of any guardian ad litem in Windham District Court." The parents argue that the court's comments show that it qualified the guardian ad litem as an expert witness without a proper foundation and for reasons which were not presented as evidence or subject to cross-examination.
In a disposition, review or modification hearing, the court may consider "all evidence helpful in determining the questions presented, including oral and written reports,... to the extent of its probative value, even though not competent in a hearing on a petition." 33 V.S.A. §§ 655(d), 658(c) & 659(b). Pursuant to these statutes, we have authorized the admission of hearsay evidence in termination of parental rights proceedings, even though such evidence is not admissible in a merits determination. See In re R.B., 152 Vt. ___, ___, 566 A.2d 1310, 1314 (1989).
Except for limited circumstances where a lay opinion "rationally based on the perception of the witness" can be given, our rules of evidence require that opinion testimony be given by an "expert" qualified by "knowledge, skill, experience, training, or education." V.R.E. 701, 702. An expert's qualifications are generally determined during a preliminary examination and cross-examination at which time his or her specific capabilities are demonstrated and tested. See Reporter's Notes, V.R.E. 702. Although we agree with the parents that such an examination would have been preferable in this case, we do not believe that the absence of an examination requires reversal.
The guardian ad litem in this case was appointed pursuant to 33 V.S.A. § 653(a) to protect the "interests of the child[ren]." The guardian ad litem is an officer of the court appointed "to represent the interests of an infant in the litigation." Whitcomb v. Dancer, 140 Vt. 580, 587, 443 A.2d 458, 461 (1982). See also Richelson v. Richelson, 130 N.H. 137, 143, 536 A.2d 176, 180 (1987) ("The role of the guardian ad litem is primarily to be an advocate for the best interests of the child, and to assist the court and the parties in reaching a prompt and fair determination, while minimizing the bitterness in this process."). As part of her duties assigned by the court, the guardian ad litem was required to come to the precise opinions asked of her in this case. Presumably, the court considered her qualification in appointing her. It was redundant to ask the same court to review its own determination when the guardian came to testify.
In reaching the conclusion that there was no reversible error in accepting the guardian ad litem's opinion, we reiterate that the court is required in a termination hearing to consider all helpful evidence to the extent of its probative value even if it were not admissible in a merits hearing. It would be anomalous to hold that a court could consider that a person has the skill, experience and judgment to determine the best interest of a child and to represent that interest before the court and then to hold that the person's opinion on the needs of the child is per se not "helpful" to the court. Cf. Sanfilippo v. Sanfilippo, 637 S.W.2d 77, 79 (Mo.App.1982) (guardian ad litem may "even ... take the stand and testify"). We are also influenced by the fact that the parents had a full opportunity to cross-examine the guardian ad litem on her qualifications to render an opinion and failed to do so. Their interests are better protected by the procedure adopted by the court than if the guardian ad litem were allowed to state an oral or written opinion without being under oath and without being subject to cross-examination.
*788 We also agree with SRS that the parents have failed to show sufficient prejudice from any error to warrant reversal. Once we determine that the trial court committed error in the admission of evidence, we will not reverse the decision unless there is a showing that prejudice flowed from the error. See In re R.M., 150 Vt. at 65, 549 A.2d at 1054. We cannot find any prejudice to the parents in this case. The parents conducted an extensive cross-examination of the guardian ad litem and were able to explore fully the bases for her opinions. Moreover, the guardian's opinion testimony was merely cumulative. See Sanfilippo v. Sanfilippo, 637 S.W.2d at 79 (where guardian's report is cumulative, error in relying on it does not warrant reversal). Finally, the fact-finder was a judge who could give the testimony such weight as it deserved and is less likely to give the witness "greater credence than his qualifications would otherwise allow." Cappiallo v. Northrup, 150 Vt. 317, 319, 552 A.2d 415, 417 (1988).
The mother next claims that the juvenile court's conclusion that she would not be able to resume her parental duties within a reasonable time was not supported by clear and convincing evidence. The juvenile court may terminate all parental rights and responsibilities only if it is in the best interests of the child, as defined in 33 V.S.A. § 667. In re H.A., 153 Vt. ___, ___, 572 A.2d 884, 890 (1990). The most important of the four factors which must be evaluated in determining the child's best interests is "whether the parent `will be able to resume his [or her] parental duties within a reasonable period of time.'" Id. (quoting In re J.R., 153 Vt. ___, ___, 570 A.2d 154, 161 (1989)).
Our review of the juvenile court's decision is limited, as was stated in In re H.A.:
[T]he juvenile court's findings of fact in disposition proceedings must be supported by clear and convincing evidence. In reaching its findings, the court must weigh the credibility of the witnesses and resolve conflicts in the evidence. The court's findings will withstand Supreme Court review unless they are clearly erroneous. The court's conclusions will also be affirmed if they are supported by the findings.
Id. at ___, 572 A.2d at 890 (citations omitted).
In the present case, the juvenile court made one hundred and twenty-nine findings which it stated were based upon credible testimony and were supported by clear and convincing evidence. Although there was some conflicting testimony, including conflicting expert testimony, the findings demonstrate that the court clearly considered all the material evidence and resolved any conflicts presented. Further, based upon its findings, the court itemized three pages of conclusions bearing on whether the mother could resume parental duties within a reasonable period of time. The court concluded that the mother failed to protect her children from the father's sexual abuse and refused to believe their reports, putting her desire to maintain her relationship with the father before their interests. It further concluded that contact between the children and the father would again occur if the mother had custody, and that the children had lost all trust in her to protect their interests. Additionally, the court found that the mother rejected almost every opportunity to gain parenting skills, to receive individual counseling, and to assist her husband so that "under no conceivable circumstances will she accept in good faith needed remediation to maintain these children under her roof." The court summarized its conclusions as follows:
In sum, the evidence is clear and convincing that if reunification were to occur between [the mother] and her boys, the likelihood of failure is so predictable that the sons will again feel betrayed by their mother and the adult world, they will view the world as a place where horrible and purposeless consequences befall the innocent, and where trust is impossible.
The court's decision to terminate the mother's parental rights is fully supported by its findings and conclusions.
The father's final two arguments on appeal also concern the termination proceeding. *789 We note at the outset, however, that he does not challenge the court's conclusion that he was unable to resume his parental responsibilities within a reasonable time. Rather, he takes issue with the procedure followed by the court in reaching this decision. He argues first that the juvenile court failed to give adequate consideration to his right of visitation when it terminated his residual parental rights. He contends that since the freedom of parent and child to relate to one another is a basic liberty, the degree of separation of parent and child should be limited to that necessary for the child's welfare, and, in this case, the court should have explored the issue of visitation. We disagree.
When the juvenile court transfers legal custody of a child adjudicated a CHINS to SRS pursuant to 33 V.S.A. § 656(a)(3), but leaves the residual parental rights and responsibilities with the parents, the parents are entitled to visitation rights. See 33 V.S.A. § 632(a)(16). Under these circumstances, it is error if the court fails to consider parental visitation rights consistent with the best interests of the child. See In re J.R., 147 Vt. 7, 11, 508 A.2d 719, 721 (1986). Since visitation is a residual parental right, the termination of such rights necessarily eliminates the parent's right to visit the child. Indeed, we cannot see how a child can start a new life with a new family if the former parents retain visitation rights. Since the termination order is fully supported by the findings and conclusions in this case, there is no further right of parental visitation.
The father also argues that the court prematurely terminated his parental rights because no alternative permanent placement for the child existed at the time of the termination hearing. Again, the father's argument is misplaced. As we stated earlier, the juvenile court may terminate all parental rights and responsibilities if it is in the best interests of the child as determined by weighing four factors enumerated in 33 V.S.A. § 667. None of these factors precludes the court from terminating the parental rights until a permanent placement is available. In fact, the one reference to an alternative placement in the statute uses the phrase "if any." 33 V.S.A. § 667(1). The absence of a requirement for an alternative placement is reasonable since the termination of parental rights may be necessary to allow the children to bond to a new family. Indeed, until the court authorizes termination of parental rights, SRS is acting under a case plan that seeks reunification of parent and child. It can change its goal to termination of parental rights, but it must be mindful that the court may not accept a change of goal and may require reunification. In the face of this uncertainty, development of an alternative permanent placement prior to the hearing may be impossible.
Affirmed.
NOTES
[1] The sister was also placed in state custody and was the subject of separate proceedings. She is not directly involved in this case.
[2] As in the earlier cases, the parents argue that this case is controlled by In re J.M., 131 Vt. 604, 313 A.2d 30 (1973). J.M. stands for the proposition that a CHINS adjudication with respect to a child is improper where all of the significant evidence and findings relate solely to siblings. See In re R.M., 150 Vt. at 68, 549 A.2d at 1056. In this case, there is significant evidence and general findings and conclusions with respect to D.A. and J.A. The holding of J.M. does not apply.