*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-227

OCTOBER TERM, 2013

| | |
|---|---|
| In re A.T. and T.T., Juveniles | APPEALED FROM: |
| | Superior Court, Orange Unit, Family Division |
| | DOCKET NO. 7/8-5-11 Oejv |
| | Trial Judge: Timothy B. Tomasi |

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, terminating her parental rights with respect to her children A.T. and T.T. We affirm.

The superior court's unchallenged findings reveal the following facts. A.T. was born in March 2004, and T.T. was born in January 2006. For much of the children's lives, mother has struggled with substance abuse, and in particular with opiates. The Department for Children and Families (DCF) first became involved with mother and the children in 2008 based on reports of A.T.'s violent behaviors. In March 2009, DCF filed a petition alleging that A.T. was a child in need of care or supervision (CHINS), citing an unmet need for mental health services based on A.T.'s violent outburst, bruises and bite marks on A.T.'s body, and drug-dealing by mother and her boyfriend. The petition also alleged that T.T. was not attending preschool and that mother had not kept social-worker appointments or followed protocols established in a family safety plan. In August 2009, the parties stipulated that both children were CHINS, and the following month the children were placed with mother under a conditional custody order (CCO) requiring her to engage in family-support services and substance-abuse treatment. In October 2009, the children were removed from mother's care after she violated the CCO by allowing a substantiated sex offender to live in her home with the children. The children were returned to mother in April 2010 and the case was closed.

A new case was opened in November 2010, however, and mother was required to participate in a number of services aimed at addressing her mental-health needs and keeping the children safe. Following an April 2011 disposition hearing, the children were placed with mother under another CCO requiring her to maintain A.T.'s school attendance, work with medical providers to address A.T.'s medical and mental-health issues, follow safety plans for protecting the children, and address her own mental-health issues. Mother was also prohibited from allowing contact between her boyfriend, a substantiated sex offender, and her children.

In May 2011, DCF filed the instant CHINS petition, citing mother's failure to get A.T. to school consistently and various concerns about burglaries, stolen guns, drugs, and the children's exposure to mother's boyfriend. A.T., who had been diagnosed with Attention Deficit Hyperactivity Disorder, continued to struggle with significant mental-health issues, especially his

ability to control his behavior and emotions. The psychiatrist who evaluated him opined that A.T. required a well-structured and predictable environment to attain some level of self-control. During an intake for drug screening, mother admitted to having a significant history of addiction, including a then-current daily usage of thirty to sixty bags of heroin. In June 2011, mother began an intensive outpatient program at a drug treatment center.

That same month, the children were again adjudicated CHINS. The parties stipulated that mother's addiction to opiates was interfering with her ability to care for her children. A disposition order, with a goal of reunification, was entered in August 2011. Among other things, mother was required to remain free of drugs and alcohol, refrain from criminal activity, engage in weekly mental-health counseling, attend school meetings, fulfill any requirements to reinstate her driver's license, obtain safe and stable housing, fully engage in suboxone treatment, and complete her intensive drug treatment program.

In May 2012, DCF filed a petition to terminate mother's parental rights. Following a four-day hearing that took place between late January and mid-March of 2013, the superior court granted DCF's petition, concluding that: (1) despite mother having success in some areas of her personal life, there had been a substantial change of circumstances due to stagnation of mother's ability to care for her children; and (2) termination of parental rights was in the children's best interests considering the relevant statutory criteria. See In re M.M., 159 Vt. 517, 521 (1993) (requiring two-step analysis examining changed circumstances and children's best interests in determining whether to terminate parental rights). The court concluded that although mother had made progress in addressing her substance-abuse issues, she had failed to make adequate progress in other areas related to her being able to parent her children successfully, including obtaining safe and stable housing, obtaining appropriate mental-health counseling, consistently attending group counseling associated with her suboxone program, regularly attending school meetings and medical appointments, visiting her children regularly, and progressing with Family Coaching Time visits.

Examining the statutory best-interests criteria, the court concluded: (1) that mother would not be able to resume her parental duties within a reasonable period of time, given that the children had significant needs that required immediate attention and that, even during a period when there was intense oversight of her progress with the question of reunification at issue, mother was unable to address adequately the areas of concern set forth in the disposition order; (2) although mother loved her children very much, she had not played a fully constructive role in their lives; (3) the children had made significant progress emotionally and academically and had bonded with their foster family, with whom they had lived since July 2012; and, (4) although mother and the children loved each other, their relationship had for years been governed by CCOs and limited visitation due to mother's various problems.

Mother's single argument on appeal is that the superior court's failure to make an in-depth assessment of the mother-children bond precludes the termination of her parental rights. She contends that, to the extent the court's lack of findings and conclusions on this subject are the result of a sparseness of evidence, the court should have concluded that DCF failed to meet its burden of showing by clear and convincing evidence that termination of her parental rights was in the children's best interests.

We find this argument unavailing, in light of the record before us. While "in some cases a loving parental bond will override other factors in determining whether termination of parental

rights is the appropriate remedy," it would be error for the court to reject a termination of parental rights based upon such a bond "where the evidence and findings plainly demonstrate that the bond is destructive in nature and has greatly harmed the children." In re J.F., K.F., K.F. & J.F., 2006 VT 45, ¶ 13, 180 Vt. 583 (mem.); In re M.B., 162 Vt. 229, 238 (1994) ("Public policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child; [the statutory best-interests criteria] recognize[] that severance of that bond may be in the child's best interest."). This is not a case, as mother suggests, where the superior court misapprehended the nature of the parent-children bond. Cf. In re D.B., 2003 VT 81, ¶¶ 5-6, 175 Vt. 618 (mem.) (reversing termination decision because court's "serious misapprehension of the record," including its finding that mother and child shared no bond, undermined confidence that remaining findings provided basis for its decision). Rather, the court acknowledged on multiple occasions that mother and the children love each other. Indeed, the court found that mother's missed visits upset the children. Nonetheless, the court determined that termination of mother's parental rights was in the children's best interests based on mother's failure to provide a constructive relationship between her and the children; the children's immediate need for permanency and consistency, as stated by the children's therapist; and mother's ongoing inability to overcome the problems that prevent her from resuming her parental duties and addressing the children's significant needs. In short, the court carefully considered the applicable statutory criteria and made a decision that was amply supported not only by the extensive record but also its detailed findings and conclusions.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice