*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-464

APRIL TERM, 2015

| | |
|---|---|
| In re B.H. and A.H.B., Juveniles | }    APPEALED FROM: |

APPEALED FROM:

Superior Court, Chittenden Unit,
Family Division

DOCKET NO. 256/257-8-12 Cnjv

Trial Judge: James R. Crucitti

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his children B.H. and A.H.B., born in April 2001 and September 2002, respectively. On appeal, father argues that the court's findings that his contact with his children has been inconsistent and that he does not have a father-daughter relationship with his daughters are not supported by the record. We affirm.

Until 2004, father assisted with the children's care, but when he resided with their mother he was physically and emotionally abusive. Father has a criminal history, including domestic assaults and exploitation of a vulnerable adult. He has mental-health, substance-abuse, and anger problems. He moved to North Carolina in 2004. Since his move, he has visited the children once, when he came to Vermont in 2013. His other contact with the children has been by telephone or video chat.

In August 2012, a petition was filed alleging the children were in need of care or supervision (CHINS). The children were subsequently removed from mother's care based on a risk of sexual abuse from mother's boyfriend. The children were both initially placed with their maternal grandmother, where their sister (who is not part of these proceedings) resides. A.H.B. was later moved to a foster home because she behaved aggressively toward her sister. Father requested that his home in North Carolina be considered as a placement for the children. A home study was conducted and concluded that father's home was too small. In July 2013 the court approved a disposition plan that called for concurrent goals of reunification with mother or termination of parental rights. The plan noted that father would participate in the home study noted above, obtain a substance-abuse assessment, undergo a mental-health evaluation, and work with parenting groups. Father did not object to this plan, and the court approved it at a September 2013 post-disposition review.

DCF filed a motion to terminate the parental rights of both mother and father in January 2014. Mother voluntarily relinquished her rights in October 2014. Following a contested hearing, the court found that there was a change of circumstances because mother relinquished her rights. The court found that termination of father's rights was in the children's best interests based on the following findings. Father lacks stability in his life. Father currently resides with his mother, and is unemployed, although he hopes to obtain employment. At the termination

hearing, father acknowledged that he could not care for the children in his present housing situation. The children have made progress since coming into custody, but need consistency and stability in their lives. Father's absence from Vermont and his lack of contact has negatively impacted his relationship with his children, and his lack of stability in housing and employment made it impossible for him to assume parental duties in a reasonable time. Father has not played a constructive role in the children's lives. Further, father has failed to provide information to DCF on whether he has addressed his substance-abuse, domestic-violence, or mental-health issues, and these issues have negatively impacted the children. Father appeals.

In determining whether to terminate parental rights, the court employs a two-step analysis, inquiring first whether there was a substantial change in material circumstances and second whether termination is in the children's best interests. In re M.M., 159 Vt. 517, 521 (1993). In determining the children's best interests, the court must consider the four statutory factors. 33 V.S.A. § 5114. "As long as the court applied the proper standard, we will not disturb its findings unless they are clearly erroneous, and will affirm its conclusions if they are supported by the findings." In re D.S., 2014 VT 38, ¶ 22, ___ Vt. ___ (quotation omitted).

On appeal, father claims that the record does not support the court's finding that, even though father had contact with his daughters by telephone, father's contact "was not consistent enough to establish a father/daughter relationship with them, as evidence by his daughters' regarding [mother's boyfriend] as their father." Because the parent-child relationship is integral to two of the statutory factors—the "interrelationship of the child with his or her parents" and whether the parent has played a constructive role in the child's welfare, 33 V.S.A. § 5114(a)(1), (4)—father claims that the court's failure to properly assess father's relationship with his daughters prejudiced the outcome.

Father points to the following facts to demonstrate that the court erred in finding that father's contact with the children was inconsistent: mother testified that before the children entered DCF custody, father sent them gifts and spoke to them on the telephone or through video chat; father had telephone contact when the children were at the maternal grandmother's home; father communicates with B.H. on social media or through text messages; and father has telephoned A.H.B. in her foster home. Father also claims that the fact that his daughters called mother's boyfriend "daddy" does not indicate that he does not have a father-daughter relationship with his daughters. He claims that there is no evidence to indicate that the girls currently view the boyfriend as their father, and points to the fact that the DCF caseworker testified that the girls refer to father as "dad."

We conclude that the court's findings were adequately supported. It is up to the family court to judge the credibility of witnesses and to weigh the evidence. D.S., 2014 VT 38, ¶ 22. In addition to the evidence highlighted by father, there was other evidence in the record regarding the extent of father's relationship with his daughters. Mother testified that since 2004 father had not supported the children and not had much contact with the children. She stated father telephoned, had video chat "every now and then" and had seen them in person once. They had never spent a vacation with him. Father testified that he has recently had more regular contact through text messages and social media, but acknowledged there were periods of time when his contact was "sporadic." Further, the DCF caseworker testified that M.H. did not view father as her "daddy."

This evidence is sufficient to support the court's findings that father's contact with the children has been inconsistent, and that he does not have a father-daughter relationship with

2

them.  See In re B.W., 162 Vt. 287, 291-92 (1994) (explaining that findings will stand unless clearly erroneous).  While father has contacted the daughters by electronic means more consistently since they have been in DCF custody, his presence in their lives has not been consistent over time.  Father has seen the children in person only once since 2004.  He has not been involved in their daily care, and has done little to ensure their safety or address their needs.  On the quality of his relationship with them, the court found that he lacks insight into how his lack of contact with his daughters has negatively impacted them, and he has not played a constructive role in their lives.

In addition, the facts support the court's conclusion that father will not be able to assume parental responsibilities within a reasonable period of time given the children's need for stability and consistency.  Father lacks any stability in his housing or employment situation.  His past substance abuse and domestic violence negatively impacted the children, and he has not provided information to DCF that he has addressed these issues.  Therefore, the court properly assessed all of the statutory factors, and there is no basis to disturb its termination decision.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice

3