VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     22-AP-203



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2023

In re B.C., Juvenile
(L.C., Father\*)

}  APPEALED FROM:
}
}  Superior Court, Chittenden Unit,
}  Family Division
}  CASE NO. 12-1-20 Cnjv
    Trial Judges: Alison S. Arms; Thomas J.
    Devine

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's order adjudicating B.C. a child in need of care or supervision (CHINS) and its order terminating his parental rights to B.C.  Father argues that the court violated his due process rights and applicable procedural rules and statutes by failing to properly serve him with the CHINS petition or provide him with adequate notice of certain hearing dates.  We affirm.

In January 2020 the State filed a petition seeking an emergency care order for then three-year-old B.C. and to adjudicate him as a CHINS.  The petition was based on both parents' risk to the child from ongoing substance abuse, concerning parenting behaviors, and criminal activity. The petition also noted father's potential extended absence due to incarceration from a pending parole violation.  The petition identified the same physical address in Burlington, Vermont for both parents.  The court granted an emergency-care order on the same day the petition was filed and held a temporary-care hearing the next day.

At the hearing, the court assigned counsel to father even though father was not present. Father's counsel informed the court she had been unable to reach him at the phone numbers he had provided to the Department for Children and Families (DCF) and the court.  The court issued a temporary-care order and continued B.C. in DCF custody.

On the day of the temporary-care hearing, the court mailed a copy of the CHINS petition and related documents to father at an address in St. Albans, Vermont. The documents were returned to the court as undeliverable. It is not apparent from the record where the court obtained this St. Albans address.

In spring of 2020, father was reincarcerated. During the remainder of the case, father was released from incarceration on three occasions, but on each occasion, he violated conditions of release within a month or two and was reincarcerated. Thus, he was in prison during the vast majority of the two-and-a-half years this case was pending at the trial court, and his sentence continues until early 2024.

Following the temporary-care hearing, the record is not completely clear as to whether and how father received notices and other documents issued by the court. It appears his counsel received all communications from the court, and counsel attended all evidentiary hearings and all other critical proceedings such as pre-trial conferences. The court mailed some documents to father directly throughout the case, but a portion of these were returned to sender. In most instances, it is not evident what addresses the court used or why the documents were returned.

In any event, father attended many, but not all, conferences and hearings remotely from prison. He attended a pre-merits conference in early February 2021 with counsel. Father then attended two of the three CHINS merits hearing dates, in April and May 2021, with counsel. Father's attorney attended the third hearing date, in August 2021, but father did not. On the third day, the only evidence presented was from mother's psychiatrist, who did not testify about father at all. At no time did father or his attorney assert to the court that father had not received a copy of the CHINS petition, request a continuance due to father's absence on the third day, object to the closure of evidence, or raise any other related objections or arguments.

The court issued an order in August 2021 concluding that B.C. was a CHINS based on thorough findings of fact drawn from evidence presented at the hearings at which father was present, including, as relevant here, that father continued to struggle with sobriety, failed to participate in a substance-abuse assessment, missed appointments with his parole officer, had a pending complaint for violating his parole, and allowed mother to continue caring for B.C. during her ongoing substance-abuse relapse.

DCF moved to terminate the parental rights of both mother and father at initial disposition. DCF hand-delivered its termination-of-parental-rights petition and case plan to father. In October 2021, father attended the first status conference regarding disposition with his attorney, at which the court and parties discussed DCF's disposition recommendations. He also attended the beginning of two further pre-hearing conferences, held in December 2021 and March 2022, but he either signed off or was dropped from both of these video conference calls. It is not clear from the record whether father voluntarily left these two conferences or his connection was terminated due to restrictions or other issues at the prison. His counsel attended these conferences in their entirety.

The court scheduled a one-day hearing in March 2022 for initial disposition and termination of parental rights. The court mailed a notice of this hearing to father directly, but the

record does not confirm whether father received it. The transcript of that hearing includes a statement by a court clerk that father refused to attend the hearing, but there is no further discussion on the record. Father's attorney participated in this hearing, and the court closed evidence at the end of the day without objection.

After the close of evidence, in April 2022, the State informed the court that B.C.'s current foster family, father's brother and sister-in-law, were no longer an option for adoption, and that DCF had placed B.C. with a new foster family. Based on this new information, father moved for a limited reopening of evidence regarding the first two best-interests factors. The court granted father's motion and scheduled a hearing for June 2022. The court later granted a motion from the State to change the time of the hearing. Father's attorney received these scheduling notices, but it is unclear whether the court sent notices directly to father. Father's attorney appeared at the hearing and explained she had sent father's caseworker a link to the remote hearing and arranged for him to attend the hearing remotely from prison at the correct time, but father did not appear. Father's counsel then explicitly waived father's appearance on the record and indicated she was prepared to move forward in father's absence. At the end of the hearing, the court confirmed with all parties that there were no further witnesses and gave the parties one week to file anything they wished the court to consider. No party filed anything further.

Following this limited evidentiary hearing, the court issued an order in June 2022 terminating both parents' parental rights, including findings of fact and conclusions of law. With respect to father, the court found, among other things, that he had been incarcerated for most of B.C.'s life, had not seen B.C. since the fall of 2021, had not played a constructive role in B.C.'s life, and would be incarcerated for another eighteen months. The court concluded that all of the best-interests factors favored termination of father's parental rights.

On appeal, father does not contest any of the court's findings of fact or conclusions of law in either its merits decision or its order terminating parental rights. Instead, father argues that the court lacked jurisdiction and violated his due process rights because it failed to properly serve him with a copy of the CHINS petition as required by applicable procedural rules. He contends further that the court failed to provide him with direct notice of the third CHINS hearing date and the date for limited reopening of termination-of-parental-rights evidence, and that these deficiencies in notice violated his due process rights and ran afoul of applicable statutes and case law, requiring reversal.

Father did not raise any of these contentions before the trial court. Generally, "[i]ssues, including those with constitutional dimensions, are waived by parties unless raised" at the trial court in the first instance. In re D.C., 157 Vt. 659, 660 (1991) (mem.); see also State v. Sole, 2009 VT 24, ¶ 13, 185 Vt. 504 ("Arguments that are neither litigated nor decided below will not be addressed for the first time on appeal." (quotation omitted)). Father urges us to review his arguments for plain error, suggesting that the court's alleged errors "strike at the very heart" of his constitutional rights. In re G.S., 153 Vt. 651, 651 (1990) (mem.); see In re D.C., 157 Vt. at 660 (explaining that under plain-error review, this Court will reverse only in "exceptional cases" where error is "obvious, grave, and serious").

As a threshold matter, we address father's jurisdictional argument but find it to be meritless. See Mullinnex v. Menard, 2020 VT 33, ¶ 11, 212 Vt. 432 ("[L]ack of subject matter jurisdiction of the trial court may be raised for the first time on appeal to this Court." (quotation omitted)). Although father appeared with counsel at and actively participated in pre-merits status conferences and the first two days of the CHINS merits hearing, he now claims for the first time that because the court did not serve him with the CHINS petition in a manner consistent with Family Rule 2 and Civil Rule 4, the court lacked jurisdiction over this case. See V.R.F.P. 2(a)(3) (stating that Civil Rule 4 shall apply to CHINS matters subject to certain statutes). Notably, father does not argue that he was unaware of the CHINS petition, and his counsel's comments to the court at conferences and hearings strongly suggest that counsel possessed a copy of the petition and had discussed it with father. Insofar as the family division needed to effect service of the CHINS petition upon him consistent with Civil Rule 4 to establish its jurisdiction and act on that petition and it failed to do so, father's voluntary appearance and participation at multiple pre-merits conferences and the merits hearing itself waived any defects in service. See Eddins v. O'Neil, 145 Vt. 364, 366 (1985) ("[A]ll defects of service of process are cured by a full, unrestricted appearance" (quotation and alteration omitted)).

Turning to father's remaining arguments, even if we were to review them for plain error, we would reject them because father has not shown that he was prejudiced. We will not reverse a decision because of a trial court's error "unless there is a showing that prejudice flowed from the error." In re L.A., III, 154 Vt. 147, 157 (1990); see also In re S.B.L., 150 Vt. 294, 297 (1988) (recognizing that it is appellant's burden "to demonstrate how the lower court erred warranting reversal" (emphasis added)). Father does not challenge any of the court's findings or conclusions in its CHINS decision or its order terminating his parental rights. Regarding the CHINS determination, father was present for the presentation of all evidence pertaining to him, and his attorney participated in the one additional hour of hearing time at which father was not present, during which only mother's psychiatrist testified. Father does not suggest that he would have introduced any additional evidence or state how the testimony of mother's psychiatrist factored into the court's CHINS findings or conclusions regarding him.

As to termination of father's parental rights, father argues that the court's failure to provide him with direct notice of the changed start time of the limited evidentiary hearing, which was strictly focused on the State's need to change B.C.'s foster family, requires reversal. But again father does not explain how his attendance at that hearing might have affected the outcome of the case. The key evidence that the court relied on to conclude that terminating his parental rights was in B.C.'s best interests—father's extended absence due to incarceration, struggles with sobriety, and unsafe decisionmaking—was presented on the first hearing date, for which father does not contend he lacked notice. His attorney participated on his behalf at the final hearing, cross-examining witnesses and presenting an alternative permanency placement in B.C.'s paternal grandmother. Father neither states how he was prejudiced by anything that occurred at the hearing, nor suggests that he would have offered additional evidence if he had attended. We will not reverse and remand for a new hearing where that hearing would not change the outcome. Moreover, where the party claiming plain error fails to identify any prejudice to him from the alleged errors, those errors cannot be "so grave and serious as to strike at the very heart of [his] constitutional rights." In re G.S., 153 Vt. at 651; see also In re D.C., 157 Vt. at 660 (rejecting father's argument that trial court committed plain error by not granting

4

him immunity with respect to pending criminal charges so that he could testify freely on his behalf in termination of parental rights case because "[father] has not shown any real likelihood that the outcome would have been different had he been able to testify with immunity"). Accordingly, father has presented no reason to disturb the trial court's judgment.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice