VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      22-AP-220



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2023

Brooke Tabor v. Tereka Hand\*

}  APPEALED FROM:
}
}  Superior Court, Rutland Unit,
}  Civil Division
}  CASE NO. 22-ST-00666
   Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Defendant appeals the trial court's final order against stalking.  We affirm.

Defendant operates a childcare center in Rutland, Vermont.  Plaintiff is defendant's former employee.  In July 2022, following plaintiff's separation from employment, plaintiff filed a complaint seeking a stalking order against defendant.  The court held an evidentiary hearing at which both parties appeared and testified.

Plaintiff testified that after she separated from employment, she had a text-message conversation with a parent of a child who attended the childcare center, and during the conversation plaintiff suggested to the parent that she might want to find a different childcare option.  Plaintiff testified that shortly after this conversation, defendant began sending plaintiff numerous text and voice messages threatening physical harm against her.  She testified that defendant threatened on multiple occasions to "pull up on" her, meaning "come and beat [her] up."  Plaintiff also described a series of text messages in which she understood defendant to cryptically imply that her cousin in New York would come up to Vermont and sexually assault or physically harm plaintiff.

Defendant denied having sent plaintiff text or voice messages.  She testified that after plaintiff separated from employment, defendant communicated with her solely face to face and had limited interactions with her.  Defendant testified that most communication with plaintiff on behalf of the business went through one of defendant's employees instead of through defendant directly.  Defendant denied ever stating that she would "pull up on" plaintiff, denied otherwise threatening physical harm against plaintiff, and denied having a cousin or mentioning anything about a cousin to plaintiff.

During her rebuttal testimony, plaintiff stated that defendant's testimony was false and that she had text and audio messages to prove it.  At the court's request, plaintiff played aloud from an unidentified electronic device voice messages that she claimed defendant had sent to

her.  Defendant objected at various points that the messages were difficult to hear or understand because the audio sounded like it was "three phones away" and there was layering, feedback, and background noise.  For some recordings, defendant admitted that the voice sounded like hers, but for other recordings she denied it or stated that she could not hear clearly enough.  Defendant stated that she had not received copies of these audio files.  The court allowed plaintiff to continue playing the voice messages.  It explained that the court and defendant were in the same position because the court also did not have copies of the files.

At the close of evidence, the court made findings on the record.  It explained that the case came down to a credibility determination because each party told completely different versions of events.  The court found that the voice in the voice messages that plaintiff played aloud at the hearing matched defendant's voice.  Because the court determined that defendant could be heard in these messages making statements inconsistent with her testimony—using the term "pull up on" and discussing her cousin—the court found that defendant lost credibility and that plaintiff's testimony was more believable.  It is not clear from the record whether all of the audio recordings the court was relying on were ones that defendant admitted sounded like her or ones that defendant claimed she could not hear properly.  The court credited plaintiff's testimony describing multiple threats of physical harm and concluded that plaintiff had satisfied the statutory elements of stalking and was entitled to a stalking order against defendant.

On appeal, defendant argues that the court erred by ignoring her objections to the audio recordings that plaintiff played aloud at trial.  She contends that it was improper for the court to rely on these recordings because she never received a copy of the recordings and could not hear all of them clearly at trial due to echoes, feedback, and background noise.  We review evidentiary rulings for abuse of discretion.  USGen New England, Inc. v. Town of Rockingham, 2004 VT 90, ¶ 22, 177 Vt. 193.

In this case, the court acknowledged that it did not require the parties to exchange exhibits before trial.  Foregoing such pre-trial disclosure is consistent with the Vermont Rules of Civil Procedure and generally within the court's discretion, especially where, as here, neither party objected to that procedure before trial.  Defendant does not assert that she requested copies of materials that plaintiff might rely on at trial through discovery or that the court somehow prevented such disclosure.  Thus, the fact that defendant did not possess a copy of the audio recordings that plaintiff played at trial was not the result of any error by the trial court and not a basis for reversal.

To the extent there was any error in the court overruling defendant's objections regarding her ability to clearly hear portions of the audio recordings, we conclude that such error was harmless.  We will not reverse a decision because of a trial court's error "unless there is a showing that prejudice flowed from the error."  In re L.A., III, 154 Vt. 147, 157 (1990).  Notably, defendant admitted at trial that several of the voice messages sounded like her, and that she could understand at least some parts of them.  Although defendant claimed that she could not clearly hear portions of some voice messages, on appeal she does not distinguish between the messages she could hear and those she could not, so as to show how she might have been prejudiced by the court's reliance on certain portions of messages.  See In re S.B.L., 150 Vt. 294, 297 (1988) (recognizing that it is appellant's burden "to demonstrate how the lower court erred warranting reversal" and that Supreme Court "will not comb the record searching for error").  And this distinction is not clear from the transcript.  Defendant does not assert, for example, that the messages that the court relied on must have been ones that defendant could not hear because in the messages where she was able to hear herself speaking, there was no discussion of her cousin

or the threat of "pulling up on" someone. Because it was defendant's burden to specifically identify how the trial court erred and she failed to do so, we reject this argument.

Even if defendant had distinguished between the messages she could hear and those she could not, we would still not reverse because defendant has not explained how the result would have been different if she had been able to hear all portions of the voice messages clearly. See Jewell v. Dyer, 154 Vt. 486, 488 (1990) (noting that mere speculation that allegedly erroneous ruling made difference in ultimate result does not satisfy appellant's burden to demonstrate prejudice warranting reversal). Defendant does not identify any additional testimony or other evidence that she might have offered to persuade the court of her credibility if she had been able to hear the messages better. Defendant presented rebuttal testimony in response to the voice messages after they were played—including her assertion that the messages were never sent to plaintiff but instead must have been recorded while defendant was talking privately with another employee in defendant's office—which the court considered but rejected. It was exclusively within the trial court's purview to decide whether to credit this testimony. See Cabot v. Cabot, 166 Vt. 485, 497 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence.").

We note too that the trial court's credibility determination was based not only on specific statements made in the messages but also on a more general contradiction: that defendant testified she had never sent voice messages to plaintiff, but plaintiff possessed audio recordings that defendant admitted sounded like her speaking. This inconsistency in defendant's testimony alone was sufficient for the court to discredit her version of events and is not challenged on appeal. We therefore conclude that any error in the court's evidentiary rulings did not prejudice defendant and does not warrant reversal.

Affirmed.


BY THE COURT:


Paul L. Reiber, Chief Justice


William D. Cohen, Associate Justice


Nancy J. Waples, Associate Justice