2005 VT 30

**In re T.T., Juvenile**

[872 A.2d 334]

No. 04-465

¶ 1. February 22, 2005. Mother appeals the family court's order terminating her parental rights with respect to her son T.T. and denying the motion for custody filed by T.T.'s paternal grandparent. We affirm.

¶ 2. T.T. was born on September 7, 2001 and taken into custody a week later by the Department of Children and Families (DCF). Mother was incarcerated at the time of T.T.'s birth. The father denied paternity until genetic testing confirmed it in December 2001. In February 2002, the family court declared T.T. to be a child in need of care or supervision (CHINS) based on the admissions of the father and mother, both of whom had histories of chronic substance abuse and incarceration. At the initial disposition hearing in March 2002, the court adopted the Department's recommendation that DCF continue to have custody of T.T. while it pursued reunification with mother. In August 2002, the Department changed its case plan goal to termination of parental rights (TPR) because mother was unable to overcome her substance abuse problems. The Department filed its termination petition in January 2003, and in June of that year, the court granted the paternal grandfather's motion for party status. The termination hearing was held May 10-12, 2004. On the first day of hearing, the grandfather, who had been involved in the proceeding with respect to visitation issues, filed a motion for custody of T.T. He had already been given custody of T.T.'s two siblings in 1999 and 2000 before he and his wife of twenty-six years divorced.

¶ 3 Following three days of testimony, the court terminated mother's parental rights and denied the grandfather's motion for custody. With respect to the termination petition, the court examined the four criteria contained in 33 V.S.A. § 5540 and concluded, among other things, that (1) neither the father nor mother would be able to resume their parental duties within a reasonable time; and (2) both parents essentially conceded that they could not, and would not be able to, care for T.T. As for the grandfather's motion, the court examined the

options in 33 V.S.A. § 5528(3) and concluded that he was not qualified to assume custody of T.T. because he delayed in seeking to be the foster care provider for T.T. at a time when the infant was bonding with his current foster family, and because he failed to appreciate T.T.'s needs concerning any proposed transfer of custody from the foster family to him. According to the court, T.T.'s best interests required that he remain with the family who had provided him with security, stability, and care for most of his life.

¶ 4. Only mother has appealed the family court's order. She first argues that the court's decision to terminate her parental rights does not comport with its objective of providing stability to T.T. while allowing him to continue a relationship with his siblings, who have already been placed in the grandfather's custody. According to mother, the court's statement that the foster family had promised to continue T.T.'s relationship with his grandfather and siblings demonstrates the court's misunderstanding of the legal import of a termination order, which cuts off all legal ties between T.T. and his siblings. In mother's view, given the court's acknowledgment that T.T. has benefitted from having a relationship with his grandfather and siblings, guardianship of some kind makes more sense than termination, which leaves T.T. exposed to the uncertainties of the foster care system.

¶ 5. We find these arguments unavailing. When the family court is presented with a petition by DCF for custody of a child without limitation as to adoption, and the court finds changed circumstances, it is required by statute to weigh the best-interest-of-the-child factors contained in 33 V.S.A. § 5540 to determine whether termination of parental rights is warranted. Here, the court examined each of the statutory factors, including the most significant one —

whether the parents would be able to resume their parental duties within a reasonable period of time, see *In re M.M.*, 159 Vt. 517, 523, 621 A.2d 1276, 1280 (1993) — and determined that termination of parental rights was in T.T.'s best interests. The evidence overwhelmingly supports the court's determination that the parents had failed to play a constructive role in T.T.'s life and that they would be unable to resume parental duties within a reasonable time. See 33 V.S.A. § 5540(3), (4). Indeed, the father and mother conceded that they could not care for T.T. and would not be able to do so in the foreseeable future.

¶ 6. Further, the evidence with respect to § 5540's first two criteria — the child's relationship with his foster parents, siblings, and others and his adjustment to his home, school, and community — also supports the family court's termination decision. As the court emphasized, the foster parents had cared for T.T. for most of his young life, nursing him through needed physical therapy and becoming his psychological parents in the process. See *In re J.M.*, 160 Vt. 146, 150, 624 A.2d 362, 364 (1993) (court's findings under § 5540(1) were not based on improper weighing of child's bond with foster family, but rather on testimony that biological parents were unable to care for child and that foster parents had become child's psychological parents). The court found that the foster parents wanted to provide T.T. with the permanence he needed, while still maintaining a relationship between him, his siblings, and his grandfather. In contrast, as the court noted, T.T.'s relationship with his grandfather and siblings was more in the nature of playmates rather than family. In short, each of the statutory criteria supports the family court's termination order.

¶ 7. Mother's call for a guardianship arrangement is unconvincing, given T.T.'s tender age. In any event, once the

family court applies the criteria in § 5540 and determines that the child's best interests warrant giving the State custody of the child without limitation as to adoption, the court need not revisit the permanency hearing options contained in 33 V.S.A. § 5531(d) and explain why it is choosing termination of parental rights over other options enumerated therein. Having made its termination decision on the basis of clear and convincing evidence, the court was not required to address the alternative disposition of long-term foster care through a guardianship. As for mother's concern that nothing is preventing the foster parents from backing out of their commitments to T.T., "[j]uvenile proceedings often involve difficult predictions about the future. Best judgment, rather than perfection, is our standard." *In re J.D.*, 165 Vt. 440, 444-45, 685 A.2d 1095, 1099 (1996). Besides, an alternative placement is not a prerequisite to termination of parental rights. See *In re E.B.*, 158 Vt. 8, 14-15, 603 A.2d 373, 377 (1992).

¶ 8. Mother also argues that the family court's conclusions regarding the grandfather's perceived faults are unsupported by its findings and the evidence. While we find support in the record for the court's conclusions that grandfather delayed in becoming involved in T.T.'s life and failed to appreciate fully the child's needs regarding any proposed change of custody, we need not address this issue because mother has no legal interest in challenging the court's denial of the grandfather's motion for custody. Mother apparently believes that if the court erred in deciding that the children should be placed with the foster parents rather than the grandfather, that error should prevent termination of her parental rights. In fact, the issues are separate, and claims about how the court evaluated the grandfather's request for custody should be addressed, if at all, in an appeal by the grandfather. The grandfather did not, however, appeal the court's decision. As explained above, the court's termination order is supported by clear and convincing evidence. Hence, mother's legal interest in T.T. is terminated, and she has no legal basis for challenging the court's ensuing custody order.

*Affirmed.*