*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-242

DECEMBER TERM, 2012

| | |
|---|---|
| In re L.O. and M.M., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 1-1-11 & 2-1-11 Frjv |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Mother appeals from an order of the superior court, family division, terminating her parental rights to the minors L.O. and M.M. She contends the trial court incorrectly analyzed the statutory factors in determining the best interests of the children. We affirm.

The trial court's undisputed findings may be summarized as follows. M.M. was five years old and L.O. was three at the time of the two-day final hearing in March and April 2012. Both children came into DCF custody in January 2011. The children were placed into foster care with their maternal grandmother, where M.M. has since remained. L.O. was later placed with her biological father, where she remains. M.M.'s father voluntarily relinquished his parental rights prior to the termination hearing.

Even before DCF removed the children from mother's custody, DCF had repeatedly offered services to mother, which she had declined. DCF requested an assessment of mother in January 2011 to assess her abilities and develop an effective program of services. The assessment showed that mother was significantly developmentally delayed; she had an IQ of 74, the ability to use language at an eight-year-old level, and no ability to tell time, budget, or read signs or labels. Personality testing revealed that she suffered from a number of significant mental health disorders, including borderline personality and paranoid personality disorder. In addition, mother had engaged in a series of abusive relationships with men, which had taken priority over the needs of the children, and she had exposed them to domestic violence and abuse. Finally, mother had not developed an attachment with the younger child, L.O. The evaluator recommended intensive, one-on-one parent education.

Accordingly, a parent educator worked extensively with mother and supervised her daily visits with the children, and a DCF case worker provided additional counseling. The trial court found that, although parenting help was given in small steps with concrete instructions and affirmative modeling, mother made little progress. Mother found it too hard to get M.M. to school, and did not see the need for his schooling, so she stopped taking him. Even after the parent educator advised her that scary movies were giving M.M. bad nightmares, mother continued to watch the movies because she wanted to see them. She rebuffed the suggestion that she read to the children, and continued to use swear words and aggressive language in front of the kids. Despite extensive coaching from a parent educator, mother was never able to establish

any kind of routine during her daily visits, and she was unable to have lengthy, unsupervised contact with the children.

Mother's visits with the children in her home were terminated when she got in a physical fight with neighbors in front of the children. In late 2011, mother was charged with disorderly conduct, theft, and selling alcohol to a minor. In addition, mother ignored advice not to associate with a sex offender whom she was dating, and who posed a threat to the children. The trial court found that mother failed to take responsibility for her lack of progress, and blamed others for her shortcomings.

Based on the foregoing, the court found that a substantial change of circumstances had occurred resulting from the stagnation in mother's ability to parent the children. Turning to the statutory best-interests factors, the court found that mother's interaction with M.M. revealed a "warm, loving relationship," but that she was unable to meet M.M.'s complicated behavioral and emotional needs, while both children had benefited from the love and structure provided by their current placements. The court further found that mother had not played a constructive role in the children's welfare, noting that she had exposed them to chronic instability and violence, allowed abusive men into their lives, "did not know what her children's needs were and could not fulfill them." As to the critical question of whether mother could resume parental responsibilities within a reasonable time, the court found that, after years of services, mother had made no progress in caring for the children, and that—in view of their age, the trauma they had suffered, and their special needs—the children required permanency immediately. Accordingly, the court found that mother could not resume her parenting role "now or in the future," and that it was in the best interests of the children to grant the petition. This appeal followed.

Mother contends the trial court incorrectly analyzed the statutory factors relating to the child's "interaction and interrelationship" with his or her parents, foster parents, and others, and whether the parent had "played and continues to play a constructive role . . . in the child's welfare." 33 V.S.A. § 5114(a)(1), (4). Mother asserts that the court considered these factors solely in terms of the mother's value to the children as custodial parent, thereby conflating these factors with the question of whether she could resume parental responsibilities within a reasonable time. Mother further argues that the court failed to acknowledge the constructive role she had played in the children's lives, particularly as that might support "a non-termination permanency option" even though she was "unable to resume a custodial role."

The record does not support the claim that the trial court failed to consider independently the statutory factors in question or to properly weigh evidence favorable to mother. As noted, the court acknowledged, based on the testimony of mother and others, that mother and M.M. enjoyed a "warm, loving relationship." The court found that mother's interactions with M.M. and L.O. revealed an inability to meet their basic needs, and that they were doing better in their current placements. The record does not support mother's claim that the court ignored these two factors or treated them as subsidiary elements of the question of whether she could resume parental responsibilities within a reasonable time. Nor does the court's finding that mother had not played a constructive role in the children's welfare, having exposed them to chronic instability, violence, and neglect, support mother's claim that the court failed to independently assess this factor or conflated it with others.

Mother also cites evidence that she was consistent in attending visits with the children and the testimony of her expert, who had conducted a disabilities assessment, that mother appeared to display good parenting skills. This witness also acknowledged that she had observed mother in a structured, artificial setting for two hours, that mother had many difficulties that

2

interfered with her parenting abilities, and that it would be difficult for mother to resume her parental responsibilities without the continual assistance of a support person. It is the trial court's role to assess and weigh the evidence in conducting a best-interests analysis, and we find nothing here to suggest that it abused or failed to exercise its discretion in this regard. See In re A.F., 160 Vt. 175, 178 (1993) (noting that "[w]e leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weight the evidence").

Nor, as mother asserts, was the trial court required to determine whether the evidence supported a "non-termination permanency option" even if she could not resume a custodial role. Mother essentially suggests that termination of parental rights in this case was inappropriate even though she was not likely to be able to resume parental duties within a reasonable time, because she had a loving bond with the children and her visits with them are important. This is not a case, as mother suggests, in which the evidence of a loving parental bond can override other factors in determining whether termination of parental rights is the appropriate remedy. See In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583. Although the trial court acknowledged a loving bond between mother and M.M., its findings do not suggest that the strength of that bond overrides a host of countervailing concerns identified by the court. Moreover, we have consistently held that where the evidence supports a termination of parental rights, the court need not consider alternative dispositions. See In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.).

Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice