*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-021

JUNE TERM, 2013

In re I.W., Juvenile } APPEALED FROM:
}
} Superior Court, Washington Unit,
} Family Division
}
} DOCKET NO. 49-4-11 Wnjv

Trial Judge: Amy M. Davenport

In the above-entitled cause, the Clerk will enter:

Mother and father separately appeal from an order of the superior court, family division, terminating their parental rights with respect to minor I.W. Mother contends: (1) the evidence failed to support the trial court's finding that her parenting abilities had stagnated since the initial disposition order and (2) the trial court's finding that mother could not resume parental responsibilities within a reasonable time was undermined by DCF's failure to provide her with sufficient services. Father contends the trial court abused its discretion in terminating his parental rights in view of the court's expressed concern that the child's foster parent, if allowed to adopt, would discourage continued contact with father. We affirm.

The facts may be summarized as follows. I.W. was born in December 2009, and came into the custody of the Department for Children and Families in April 2011, when he was sixteen months old. The child was placed with his aunt, mother's sister, where he has since remained. Mother stipulated to an adjudication of CHINS in June 2011, acknowledging that she was unable to care for the child due to depression and alcohol abuse.

As the trial court later found, the parents' relationship was volatile and marked by frequent fights and alcohol abuse, which resulted in father's incarceration for domestic assault in August 2010. He pleaded guilty, was placed on probation, violated probation, and as result was reincarcerated until July 2012. Thus, he was absent for most of the time that I.W. was in DCF custody.

The trial court approved a disposition plan in July 2011 that had a concurrent goal of reunification with mother or adoption. The case plan established as conditions for reunification that mother meet the child's needs by providing a safe and stable environment, maintaining

sobriety, and addressing her depression. She was required to consistently attend supervised visits, remain substance free, attend substance-abuse counseling, participate in a mental-health evaluation, and begin mental-health counseling. Father was required to complete a psychosexual evaluation, participate in substance-abuse and domestic-violence programming, and secure housing when released from prison.

In February 2012, DCF changed the case plan recommendation to adoption, citing mother's minimal progress toward achieving the case plan goals and father's continued incarceration and failure to respond to opportunities to be involved in matters concerning the child. A TPR hearing was held over two days in May 2012 and October 2012. The court issued a written decision in December 2012, granting the petition as to both parents. The court found that, since the disposition hearing, mother remained unemployed, was inconsistent in attending team meetings, unable to engage in discussions about I.W., and continued to miss many supervised visits, although her family coach observed that mother had progressed in her ability to engage with the child during the visits that she did attend. Mother had failed to follow through on the case-plan goal of obtaining substance-abuse counseling, and continued to smoke marijuana daily. She had also failed to follow up on mental-health counseling referrals.

Concerned about mother's failure to obtain a comprehensive mental-health evaluation, the trial court ordered a psychiatric evaluation after the first day of the hearing in May 2012. The resulting evaluation and report from Dr. Weker, a psychiatrist, diagnosed mother with three "overlapping" clinical issues: major depression and anxiety, including PTSD; substance abuse; and substantial intellectual and cognitive impairments, including "significant limitations" in receptive and expressive language skills. The "net effect" was to leave her with little ability to recognize or address her mental-health difficulties, exercise judgment, deal with adversity, or plan and manage her life without assistance. Addressing these interrelated problems would require, in the evaluator's opinion, extensive, multi-faceted, and long-term treatment.

In view of mother's overall lack of progress and father's "long absence" the court concluded that there had been a substantial change of circumstances. Turning to the best-interests criteria, the court found that mother had failed to demonstrate a commitment to the child's needs necessary to parent him on her own; that although she had made some effort to address her mental-health impairments since Dr. Weker's report, it had taken a full year to reach that point; that her substance-abuse and mental-health issues presented a "significant barrier" to her ability to resume parental responsibilities; and that, even assuming full engagement in services, it would be a long time before she was able to resume parental duties, well beyond what was necessary for the child's developmental needs and need for permanency.

As for father, the court found that, although he had addressed a number of issues while incarcerated through available programming, he had little relationship with I.W., having been absent for most of the child's life, had made little effort to be involved with the child while incarcerated, had failed to attend court hearings when given the opportunity, and had missed

2

several visits since his release. Accordingly, the trial court concluded that father had not played a constructive role in the child's life, and would require too long to rebuild a relationship given the child's need for permanency. As for I.W.'s current placement, the court found that he had developed a close and loving relationship with his aunt and her fiance, and considered them to be his parents. The trial court thus concluded that neither parent could resume parental responsibilities within a reasonable period of time and granted the petition as to both parents. This appeal followed.

Mother first contends the trial court's finding that her parenting ability had improved over time was inconsistent with its finding of changed circumstances based on stagnation. See In re H.A., 153 Vt. 504, 515 (1990) (noting that a substantial change in circumstances is most often found when the parent's ability to care properly for the child "has either stagnated or deteriorated over the passage of time."). The trial court here actually found that while mother had made some progress in relating to I.W. during her supervised visits, this was "overshadowed by her continuing lack of consistency with respect to visits and her failure to engage in either mental health counseling or substance abuse counseling." Accordingly, we find no inconsistency in the court's finding of stagnation.

Mother also contends that "DCF's failure or refusal" to provide reasonable services constituted a circumstance beyond her control that contributed to the failure to progress. See In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that "stagnation caused by factors beyond the parents' control could not support termination" while rejecting parents' claim that State's failure to provide adequate services contributed to stagnation). The claim is unpersuasive. Mother's DCF social worker testified that she made a number of treatment referrals which mother failed to pursue, and the trial court accordingly found that mother failed to "follow[] through with outpatient treatment" and "signed up for outpatient counseling, but . . . failed to regularly attend and was dropped from the program." Thus, the record supports the court's finding of stagnation based upon mother's "failure to engage in either mental health counseling or substance abuse counseling." Although mother asserts that her mental health issues made it difficult for her to follow-up on referrals, this does not demonstrate an inability to progress due to factors entirely beyond her control.

In a similar vein, mother asserts that the court's finding she could not resume parental responsibilities within a reasonable time is undermined by DCF's failure to provide more assistance in helping her to schedule a mental health evaluation, and by Dr. Weker's report noting mother's need for extensive assistance in managing her daily life. As noted, however, the record supports the court's finding that mother was provided with referrals and failed to pursue them. Moreover, as the trial court here found, the psychiatric evaluation indicates that mother's significant mental-health issues, substance abuse, and cognitive impairments will require extensive and long-term care entirely inconsistent with the child's pressing need for stability and permanence. Accordingly, we find no error.

3

Father contends on appeal that the trial court abused its discretion by terminating his parental rights despite finding that it may not be in I.W.'s best interests. The claim is predicated on the court's expressed concern that, if the petition were granted, I.W.'s foster mother, his aunt, would not make the effort to arrange for continued supervised visits with mother and father, but would allow contact to lapse, which "may not be in [I.W.'s] best interests over the long term." Contrary to father's claim, the trial court here was merely observing that the child's interests would be served by facilitating some continued with parents; the court was not finding or implying that termination of parental rights was not in the child's best interests. Indeed, the court clearly concluded otherwise, and as such it was not compelled to consider an alternative disposition such as long-term foster care. See In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.) ("[O]nce the family court . . . determines that the child's best interests warrant giving the State custody of the child without limitation as to adoption, the court need not revisit the permanency hearing options . . . .)"); In re L.A., 154 Vt. 147, 160 (1990) (court is not required to address parent-child visitation when deciding whether termination is in child's best interests). Accordingly we find no inconsistency in the court's findings, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice