*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

SUPREME COURT DOCKET NOS. 2013-221& 2013-222

JANUARY TERM, 2014

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } Superior Court, Orleans Unit, |
| v. | } Criminal Division |
| | } |
| | } |
| Jeffrey Powers | } DOCKET NOS. 455-10-10 Oscr & |
| | 265-4-11 Oscr |

Trial Judge: Howard E. VanBenthuysen

In the above-entitled cause, the Clerk will enter:

Defendant appeals his violation of probation adjudication and subsequent probation revocation. On appeal, defendant argues that the court erred in finding he violated a condition requiring electronic monitoring because the condition was an impermissibly broad delegation of authority to his probation officer and he did not have notice that tampering with the electronic monitoring unit was a violation. Defendant also argues that the court abused its discretion in revoking his probation. We affirm.

In January 2012, defendant pleaded guilty to stalking, burglary and voyeurism.[1] He subsequently received an effective sentence of four-to-seven years, all suspended. He was placed on probation with several conditions. These included standard conditions and special conditions requiring defendant to submit to electronic monitoring as recommended by his probation officer[2] and remain 1000 feet away from his victims. He was also placed under sex offender special conditions, which, among other things, prohibited defendant from purchasing, possessing or consuming alcohol or illegal substances.

In January 2013, a probation violation complaint was filed, alleging that defendant had violated the three conditions specified above. His probation officer averred that defendant had

---

[1] The plea agreement encompassed charges from two different dockets. In Docket No. 455-10-10 Oscr, defendant pleaded guilty to voyeurism and the State dismissed a stalking charge; in Docket No. 265-4-11 Oscr, defendant pleaded guilty to both stalking and burglary.

[2] In one docket, the additional condition reads "Electronic monitoring as recommended by PO," in the other it simply states "Electronic monitoring as recommended." The parties have treated the word "recommended" as synonymous with "required." Absent any argument, we understand the word in the same way.

twice removed and several times tampered with the electronic monitoring unit, had consumed alcohol, and had been within 1000 feet of one victim's residence.

Defendant contested the violations, and the court held a hearing. Defendant had two probation officers during his probationary period prior to the violations being filed. Both testified. His first probation officer explained that in February 2012, he met with defendant and reviewed the terms and conditions of probation. He stated that he read the conditions to defendant and both he and defendant signed the terms and conditions. As to the electronic monitoring, he testified that he did not initially require electronic monitoring, but that he discussed the possibility with defendant. He reported that defendant did not have any questions during their conversation and confirmed that he understood.

The second probation officer assumed responsibility for defendant in October 2012. She testified that she reviewed all of defendant's terms and conditions with him at that time. She explained that she placed defendant on electronic monitoring because officers found a pair of women's underwear in defendant's bedroom, which violated a probation condition prohibiting defendant from possessing erotic material.[3] She testified that she reviewed the expectations regarding the electronic monitoring with defendant. She also said that corrections officers routinely discuss tampering with the unit when the unit is applied. Defendant signed the probation orders and did not have any questions about the conditions.

The probation officer testified that on December 31, 2012, defendant came into her office to request a curfew change. She examined the monitoring device because it was sending tampering notifications and found that the bracelet was not attached, but just hooked together. Defendant reported to her that he ripped it off because it was too tight. Defendant also reported that on an earlier occasion, the bracelet had broken off when he got out of a truck.

A community corrections officer also testified. He explained that he went to defendant's house in December for a check and found several full and empty beer cans. Defendant admitted drinking. A test revealed that his blood alcohol concentration was 0.134. The community corrections officer also stated that he found defendant's monitoring unit on the counter, not connected to defendant's ankle. Defendant stated that the unit came off when he was getting into his truck. The corrections officer explained to defendant that this was a violation and instructed defendant to contact corrections if there was a problem with the unit. He reattached the unit, and defendant did not complain about how it fit.

A second community corrections officer testified. She explained that defendant was notified when his electronic monitoring unit was attached that he should notify someone immediately if he experienced a problem with the unit. She also stated that she received notice of strap violations prior to defendant coming into the office on December 31. Defendant admitted that he had pulled it off on December 25, the same day the other corrections officer had reattached the unit.

---

[3] Defendant's probation officer testified that this was of particularly concern because defendant's underlying offense of burglary involved stealing women's underwear.

2

The court made oral findings. The court credited the probation officers' testimony that they had informed defendant of his conditions, including those on which the violations were based. The court found it was reasonable for defendant's probation officer to impose electronic monitoring after finding women's underwear in defendant's bedroom, given the facts of defendant's underlying charges. The court found that defendant violated his probation by possessing and consuming alcohol. The court also credited the testimony of both corrections officers concerning the facts surrounding defendant's removal of his electronic monitoring device. The court was not persuaded by defendant's explanations of how the device came off and found that defendant wrongfully removed the device the first time and, because he was angry, then took it off again after it was reapplied. Consequently, the court found that defendant also violated his probation by failing to comply with the electronic monitoring requirement. The court found that defendant's presence within 1000 feet of his victim's residence was not volitional and that he was not in violation of this condition.

At sentencing, the investigating officer and the victims of defendant's offenses testified. Defendant's probation officer also testified. She testified that defendant needed a higher level of supervision because his community supervision was not successful. She recommended a twelve-to-eighteen month in-house program and then furlough. Defendant moved for a continuance to allow testimony of an expert on defendant's need for treatment. The request was granted and at the continued hearing, defendant presented testimony from his treatment provider. At the close of the hearing, the court made oral findings. The court highlighted defendant's record, including supervised community sentence violations and a prior unsatisfactory discharge from probation. The court found that community treatment was not working because defendant was not cooperating with the terms of his supervision. The court explained that defendant's underlying offense was severe and that his act of taking off his electronic monitoring device was a serious violation of trust. The court noted that when defendant violated his probation, he was suspended from his treatment group, and therefore defendant was "an untreated sex offender." The court concluded that it would revoke defendant's probation to provide needed protection for the community and to give defendant an opportunity for in-house treatment.

On appeal, defendant first argues that the court erred in finding that he violated the condition regarding electronic monitoring because he did not have notice that his actions would amount to a violation, and the condition was an impermissible delegation of power to his probation officer.

The State must establish a probation violation by a preponderance of the evidence. State v. Klunder, 2005 VT 130, ¶ 7, 179 Vt. 563 (mem.). "The State meets its burden by showing that there has been a violation of the express conditions of probation, or of a condition so clearly implied that a probationer, in fairness, can be said to have notice of it." Id. (citations omitted). Due process requires that a defendant is given notice of what conduct constitutes a probation violation. State v. Hammond, 172 Vt. 601, 602 (2001) (mem.). A violation allegation presents the court with a mixed question of fact and law—a factual determination of the probationer's actions and a legal conclusion about whether those actions amount to a violation of his conditions of probation. Klunder, 2005 VT 130, ¶ 7.

Defendant argues that he did not have notice that tampering with the strap of the monitoring unit could result in a violation of his probation. It is important to emphasize the

substance of defendant's violation. On appeal, defendant characterizes his violation as "wearing the monitoring unit in a manner different than instructed," and not having the device strapped to his ankle "in a particular way." In fact, the court violated defendant for <u>removing</u> the monitoring device. The court found defendant wrongfully removed the device the first time and put it on his counter and then when it was reapplied "ripped it off again" because he was angry. These findings are supported by the evidence and not challenged by defendant on appeal. See <u>Klunder</u>, 2005 VT 130, ¶ 7 (explaining that findings will be upheld if supported by evidence).

Further, defendant had ample notice of the condition requiring electronic monitoring, and that removing the equipment from his ankle could result in a violation. Defendant's conditions of probation contained a condition that specifically authorized imposition of electronic monitoring. Defendant signed the form and two probation officers reviewed the conditions with defendant. See <u>Hammond</u>, 172 Vt. at 602 (explaining that instructions and directions of probation officer are sufficient to put defendant on notice of conditions). Although the probation officers did not specifically tell defendant that tampering with and removing the unit would result in a violation, this condition was "so clearly implied" that defendant had notice of it. <u>Klunder</u>, 2005 VT 30, ¶ 7 (quotation omitted). It would wholly defeat the purpose of electronic monitoring if a probationer could remove the unit at will; therefore, clearly implied in the electronic monitoring condition was the requirement that defendant not tamper with and remove the unit.[4]

Defendant next claims that the condition amounted to an impermissible delegation of power to his probation officer. See <u>State v. Moses</u>, 159 Vt. 294, 300 (1992) (explaining that court may not delegate power to impose probation condition to probation officer). This facial challenge to the condition should have been raised on direct appeal from the sentencing order, and defendant has waived his right to collaterally attack the condition now that he has violated it. See <u>State v. Amidon</u>, 2010 VT 46A, ¶ 9, 188 Vt. 617 (mem.) (holding that probationer is barred from raising collateral attack to probation condition he is charged with violating where challenge could have been raised on direct appeal from sentencing order). Given that the conditions were imposed as part of a plea agreement, defendant's chance of success in challenging those conditions in a direct appeal may have been small, but his challenge to the condition should have been raised at that time. See <u>id</u>. ¶ 10.

Finally, defendant argues that the court abused its discretion in revoking his probation. When a violation of probation is established, the court has discretion to revoke probation and require the original sentence to be served, continue probation, or alter the conditions of probation. See 28 V.S.A. § 303(b); <u>State v. Priest</u>, 170 Vt. 576, 576 (1999) (mem.). Revocation is appropriate when the court finds that confinement is necessary to protect the public, the probationer is need of treatment in a correctional facility or it "would unduly depreciate the seriousness of the violation if probation were not revoked." 28 V.S.A. § 303(b). The primary purpose of a revocation hearing is not to determine culpability but to decide whether the rehabilitative alternatives to incarceration remain viable for the defendant and sufficient for the protection of the community. See <u>State v. Lockwood</u>, 160 Vt. 547, 552 (1993) (explaining that

---

[4] For this reason, we need not reach defendant's argument that the specific instructions of the corrections officers, who informed defendant about proper use of the unit, were insufficient to provide defendant with notice that removing the unit could result in a violation.

4

revocation results when continuing probation "would be at odds with the need to protect the public and society's interest in rehabilitation").

Defendant argues that the court's revocation was based on his need for treatment, but this rested on unsupported findings that defendant is an "untreated sex offender" and had failed in treatment in the community. Defendant contends that his treatment while on probation was simply suspended due to his probation violation, and therefore he was not untreated and did not fail in treatment. There was no error. Defendant's counselor testified that defendant's participation in his counseling program was suspended when the probation violation was filed. Because defendant remained untreated, there was evidence to support the court's finding that defendant was an untreated sex offender. Further, the attempt at treating defendant in the community while he was on probation failed. It does not make any difference to this conclusion that the failure was caused by probation violations rather than behavior during counseling sessions. Therefore, the court did not err in so finding.

In any event, the court's decision to revoke was supported by the other criteria of § 303(b). When a court revokes probation, it is not required to "specifically identify which of the alternatives set forth in § 303(b) it has employed so long as at least one readily supports the court's conclusion." State v. Millard, 149 Vt. 384, 387 (1988). Here, the court found that revocation was also appropriate because defendant's removal of his electronic monitoring bracelet was a serious violation of his probation conditions, and incarceration was necessary to protect the public. Therefore, the court did not abuse its discretion in revoking defendant's probation.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Geoffrey W. Crawford, Associate Justice