*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-315

JANUARY TERM, 2015

In re S.G., Juvenile

} APPEALED FROM:
}
} Superior Court, Windham Unit,
} Family Division
}
} DOCKET NO. 158-12-12 Wmjv

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Mother appeals an order of the superior court, family division, terminating her residual parental rights with respect to her daughter, S.G. We affirm.

S.G. was born in August 2006 with cerebral palsy, and has had extensive medical treatment for the disorder since then. She came into the custody of the Department For Children and Families (DCF) in December 2012 when mother and her husband were arrested for possession of heroin in the early morning hours after they had left her alone in a motel room. Mother's husband, who is not S.G.'s father,[*] pled guilty to a charge of possession of heroin. The same charge against mother was eventually dismissed, but the family court did not find credible mother's testimony at the termination hearing that she was unaware of her husband's possession of heroin. In February 2013, the family court found, based on mother's admission to the allegations contained in DCF's petition, that S.G. was a child in need of care or supervision (CHINS). Meanwhile, mother was arrested on a probation violation and incarcerated in a New Hampshire correctional facility until her release in May 2013.

A disposition order continuing S.G. in DCF custody was issued in March 2013. The disposition case plan recommended reunification with mother by December 2013, and called for mother to: (1) follow all probation and parole recommendations; (2) complete a mental health evaluation and follow its recommendations; (3) complete a substance abuse evaluation and follow its recommendations; (4) attend parent education classes; (5) sign all necessary releases to allow DCF to monitor her progress; (6) alert DCF to any change of address; (7) seek appropriate housing through recommended services; (8) follow recommendations of employment services; (9) follow through on S.G.'s medical care when the child was in her care; (10) attend family time coaching visits; and (11) maintain regular contact with S.G. At a July 2013 permanency review hearing, the case plan goal was modified to concurrent goals of reunification or adoption. In late November 2013, the case plan goal was modified to termination of parental rights (TPR) by May

---

[*] The father's parental rights were terminated by default when he failed to appear at the termination hearing. He had made no effort to obtain parent-child contact with S.G., and apparently had not played any significant role in the child's life.

2014. Mother was arrested for shoplifting on multiple occasions between the fall of 2013 and the spring of 2014.

DCF filed a TPR petition in January 2014, and a termination hearing was held on May 1, 2014. Following the hearing, the family court issued an order granting DCF's petition and terminating mother's parental rights. The family court found that there had been a substantial change of circumstances through stagnation, and that the best interests of S.G., considered under the statutory criteria set forth in 33 V.S.A. § 5114(a), compelled termination of mother's parental rights. See In re R.W., 2011 VT 124, ¶ 14, 191 Vt. 108 ("When termination of parental rights is sought, the trial court must determine, first, whether there has been a substantial change in material circumstances and, second, whether termination is in the child's best interests."). Regarding the first prong of the two-part test, the court found that mother had made very little progress toward reunification, noting that her housing had been unstable and shifting; she continued to engage in criminal activity; she had no fixed or stable source of income; she had not provided to DCF any proof of her engagement in mental health or substance abuse treatment; she had not signed releases necessary for DCF to determine if she was receiving appropriate treatment; and although she visited S.G. fairly regularly, she missed many visits and never progressed to unsupervised visits.

As for S.G.'s best interests, the court found that: (1) S.G. had regular contact with mother at most for only two two-hour visits per week, while, in contrast, the child had developed a close connection with her foster family and their community; (2) S.G. had been in custody for over sixteen months, and yet mother, despite having ample opportunity, failed to demonstrate that she had progressed toward being able to resume parental duties within a reasonable period of time from the perspective of the child, who was in particular need of structure and predictability due to her specialized medical needs; (3) although mother and S.G. loved and cared about each other, mother was struggling to meet her own needs and was incapable of meeting S.G.'s needs; and (4) although mother continued to maintain a connection with S.G., the connection was marginal and intermittent and caused S.G. distress at times because the child worried about her mother.

Mother's sole argument on appeal is that the termination order must be reversed because the family court abused its discretion by sustaining an objection to the foster mother being asked whether she would maintain S.G.'s relationship with mother should she adopt the child. During cross-examination, mother's attorney asked the foster mother the following question: "Now, when you think about S.G. being freed for adoption, can you tell us what your intentions are, regarding S.G. and her relationship with her mother?" The State's attorney objected, arguing that the question was irrelevant because it had "no relationship to the best interest of the child or the stagnation issue." After the family court sustained the objection, mother's attorney asked the foster mother whether she had promoted a positive attitude toward S.G. about her mother during the time she provided care for the child and whether she intended to continue to do so. The foster mother answered in the affirmative to both questions. Mother argues on appeal that the foster mother's intentions regarding whether she would facilitate continued mother-child contact following the child's adoption "would inform the court regarding her views on the extent of the mother's importance to S.G. and the role played by the mother in S.G.'s life" and "also would indicate to the court whether termination of parental rights would eliminate all mother-child contact or not, a factor bearing on the appropriateness of the disposition option."

We find no merit to the argument. The challenged question was not focused on mother's relationship with S.G. but rather on whether the foster mother would continue to promote a

relationship with mother and S.G. if and when she adopted the child. An order terminating residual parental rights, by definition, ends a parent's legal right to have a relationship with the subject child. See 33 V.S.A. § 5102(26) (defining "Residual parental rights and responsibilities" as "those rights and responsibilities remaining with the parent after the transfer of legal custody of the child, including the right to reasonable contact with the child, the responsibility for support, and the right to consent to adoption"). A court issuing a termination order cannot assume that there will be any contact between the terminated parent and the subject child, regardless of what the potential adoptive parents presume might happen if in fact they do adopt the child. Indeed, a termination order is not dependent upon the existence or likelihood of an adoptive home. See In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.) ("[A]n alternative placement is not a prerequisite to termination of parental rights."). Because this termination order was not dependent upon the existence of an adoptive home, the trial court could reasonably conclude that any speculation about the potential adoptive parents' attitude towards maintaining a relationship between the subject child and the terminated parent would not be relevant to its termination decision. See V.R.E. 401 (stating that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Nor would the foster mother's speculative answer have carried any probative value as to the relationship between S.G. and mother, which was the subject of other testimony and several trial court findings. Thus, the family court did not abuse its discretion in sustaining the objection of the State's attorney on this point. Moreover, even if the foster mother's answer to the challenged question should have been allowed, the foster mother immediately thereafter agreed that she had always promoted, and would continue to promote, a relationship between S.G. and mother. See State v. Felix, 2014 VT 68, ¶ 19, ___ Vt. ___ (stating that evidentiary rulings are reviewed for abuse of discretion resulting in prejudice).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3