*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-371

FEBRUARY TERM, 2015

| | |
|---|---|
| In re A.N., Juvenile | APPEALED FROM: |
| | |
| | Superior Court, Rutland Unit, |
| | Family Division |
| | |
| | DOCKET NO. 73-5-13 Rdjv |
| | |
| | Trial Judge: Howard A. Kalfus, Acting |
| | Judge, Specially Assigned |

In the above-entitled cause, the Clerk will enter:

Father appeals termination of his parental rights to his daughter, A.N., born in May 2011. Father argues that the court erred in determining that termination was in A.N.'s best interests because father would not be able to parent within a reasonable period of time. We affirm.

Father has a criminal record in Vermont and New York, mostly for drug-related offenses. In June 2012, when A.N. was about thirteen-months old, father was incarcerated in New York on a gun charge. After father was incarcerated, mother was the sole caregiver for A.N. In May 2013, a petition was filed to have A.N. adjudicated a child in need of care or supervision (CHINS) due to neglectful supervision by mother. Custody of A.N. was transferred to the Department for Children and Families (DCF). Mother stipulated that A.N. was CHINS for lack of proper parental care. The initial case plan set goals for mother related to her ongoing criminal behavior and drug issues, and required father to, among other things, consult with DCF on ways that he could support A.N. The initial disposition order in August 2013 maintained DCF custody with a concurrent plan of reunification with mother or adoption. In March 2014, DCF filed to terminate the rights of both mother and father.

A contested hearing was held in September 2014. Father was in jail during the entire child-neglect case, and continued to be incarcerated at the time of the final hearing. At the hearing, the State presented testimony from a DCF investigator, A.N.'s foster mother, a DCF social worker, and mother's probation officer. The DCF social worker testified that father asked her about ways to support A.N. and she recommended writing to her, but father did not reach out or try to establish a relationship with A.N. through cards or letters. Father appeared by phone and testified on his own behalf. Following the hearing the court made oral findings on the record. The court found there was a change of circumstances due to stagnation. The court explained that father was no closer to parenting A.N. because he had seen A.N. only once since he was incarcerated in June 2012. Father had not telephoned A.N. or sent her a letter during the time he was in prison. The court also concluded that termination was in A.N.'s best interests. The court found that there had essentially been no interaction between father and A.N., and that father had not demonstrated any emotional support or affection for A.N. The court found that

father would not be able to resume parenting within a reasonable period of time given that father would not be released from custody for at least seven months, and then would need to find suitable housing, reintegrate into the community, and get to know his daughter. The court explained that this was too long for A.N. to wait given her young age and developmental needs. Father appeals.

To terminate parental rights, the court must first consider whether there has been a substantial change in material circumstances, 33 V.S.A. § 5113(b), and, if so, whether termination is in the child's best interests. In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114(a). The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time. In re J.B., 167 Vt. 637, 639, (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings and affirm the findings unless clearly erroneous. Id.

On appeal, father argues that the court erred in finding that he would not be able to resume parenting within a reasonable period of time. Father asserts that the court's conclusion that father would not be able to resume parenting within a reasonable period of time is flawed because the court incorrectly assumed that A.N.'s current foster home would become a permanent, adoptive home. Father argues that because there was no guarantee of immediate adoption, A.N. could afford to wait for father to be ready to parent.

There was no error. There is no support for father's assertion that because A.N. might not be adopted, she could afford to wait for father to able to parent her. The possibility of adoption is not a proper consideration at the termination stage because "an alternative placement is not a prerequisite to termination of parental rights." In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.). It is the evaluation of the best-interests factors that is determinative, and here the court properly did not consider the possibility of adoption in its evaluation of A.N.'s best interests. To the extent the court mentioned A.N.'s foster placement it was to find that although A.N. had been in her current foster home for only one month, she was in the same placement as her brother, had good relationships with her foster family, and was adjusting well. These were proper considerations of the statutory best-interests factors to evaluate A.N.'s interaction with her foster parents and adjustment to her current home. See 33 V.S.A. § 5114(a)(1)-(2) (listing best-interests factors including child's interrelationships with parents, siblings, and foster parents, and child's adjustment to her home, school, and community).

Father also argues that the court's finding that he would not be able to parent in a reasonable period of time was flawed because there was no evidence to support the court's finding that after his release he will need additional time to get to know his daughter. Father asserts that even though A.N. was with her foster parents for only a month, she was well adjusted there and could just as easily adjust to living with father, especially given that father loves A.N.

Father fails to demonstrate that the court abused its discretion in determining that he would not be able to resume parenting within a reasonable period of time. The reasonableness of the time period must be measured from the child's perspective, In re B.M., 165 Vt. 331, 337 (1996), and may take account of the child's young age or special needs, In re J.S., 168 Vt. 572, 574 (1998) (mem.). Here, the court found that father would not be able to resume parenting within a reasonable time because A.N. needed immediate permanency and it would be an additional seven months at least before father was out of prison and then he would need additional time to find suitable housing and employment, and to learn about his daughter's

2

current needs. These findings are all supported. It was reasonable for the court to conclude that A.N., who was three and a half at the time of the final hearing and had been in custody since she turned two, could not wait at least another seven months for permanency. See In re W.L., 2009 VT 41, ¶ 16, 185 Vt. 641 (mem.) (affirming trial court's determination that child's young age made need for stability and permanence more pronounced). Further, it was within the court's discretion to find that although father loved his daughter, father would require time to develop a relationship with A.N., and to learn her needs and how to care for her. Other than one visit, father did not have any interaction with A.N. during the previous two years. Consequently, father had played no current role in A.N.'s life and had no current relationship with A.N. Therefore, it was reasonable for the court to determine that father would require some time to prepare for parenting A.N.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice