*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2016-014

MAY TERM, 2016

| | |
|---|---|
| In re C.B., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Addison Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 4-1-14 Anjv |

Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's order terminating her parental rights in C.B. Father voluntarily relinquished his rights conditioned on the termination of mother's rights. Mother argues that because the court acknowledged her important role in C.B.'s life, its termination decision lacks a rational basis. We affirm.

C.B. was born in August 2009. In January 2014, C.B. was taken into the custody of the Department for Children and Families (DCF) due to mother's drug use. Mother admitted that she was addicted to heroin and stipulated to a CHINS adjudication. A disposition case plan was approved with a case plan goal of reunification with mother. In December 2014, DCF moved to terminate mother's rights. One year later, the court held a termination hearing. Father entered a voluntary relinquishment but mother contested DCF's petition to terminate her rights. Shortly after the hearing, the court issued an order terminating mother's parental rights.

The court's findings, which are unchallenged, include the following. Mother began using heroin in 2012 and continued using it until the fall of 2014. Mother used drugs while C.B. was in the house and mother was clearly under the influence at times when the child was in her care. After C.B. was taken into custody, mother had three failed attempts at residential treatment. In October 2014, mother entered medication-assisted treatment. Mother claimed to have abstained from heroin use since then, and no contrary evidence was adduced at the hearing. Mother continued to use marijuana, however, which precluded her from progressing to take-home doses of Suboxone. The court found that mother's drug addiction clearly had an impact on C.B. and her continued drug use interfered with her progress as a parent. Mother also has a history of relationships with men who subjected her to domestic abuse. C.B. witnessed this abuse. C.B. was also sexually abused by one of mother's partner and threatened with violence if she revealed the abuse. All of these experiences severely traumatized C.B., and she has been diagnosed with post-traumatic stress disorder (PTSD).

During the almost two years that C.B. was in custody of DCF, mother's progress in addressing the goals of the case plan was "halting." Although mother and C.B. loved each other, there remained a "large gap" between how mother related to C.B. and "what full-time parenting would look like." In the nearly two years since C.B. had been in DCF custody, mother had not yet progressed beyond supervised visits. While C.B.'s visits with mother were important to her, C.B. worried that mother did not always tell the truth and that mother has "bad friends." Visits with mother had not progressed to "normal" family time. The court found that there were multiple obstacles preventing mother from assuming a full-time parenting role, including her lack of employment or even employment prospects; her total dependence on others for transportation and basic needs, including food and housing; and her dependence on marijuana. Additionally, C.B. had special needs given the trauma she had experienced. Mother acknowledged all of these obstacles, but she had no plan to surmount them; she simply asserted that things would be fine should she be reunited with C.B. The court found that mother could not meet C.B.'s needs and was unlikely to be able to do in the foreseeable future. In reaching its conclusion, the court noted that C.B. had been in the same foster home since November 2014, and she was doing very well there. Based on these and other findings, the court concluded that mother had stagnated in her ability to parent, and that termination of mother's rights was in C.B.'s best interests. This appeal followed.

Mother argues that because the court acknowledged her important role in C.B.'s life, it should have ensured that mother-child contact continued. Mother thus contends that the court's termination decision lacked a rational basis. According to mother, if continued mother-child contact was important, then the court was obligated to choose a disposition option other than termination.

As we have often repeated, the court must consider four statutory factors in determining if termination of a parent's rights is in a child's best interests. See 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.). The court applied the appropriate standard here and its decision is supported by the record. Once the court decided by clear and convincing evidence that termination was appropriate, it was not required to address other permanency options which might allow for continued parent-child contact. In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496.

As set forth above, the court concluded that notwithstanding the love between mother and C.B. and the somewhat constructive role mother had played in C.B.'s life, the statutory factors showed that termination of mother's rights was in C.B.'s best interests. See In re M.B., 162 Vt. 229, 238 (1994) (recognizing that "[p]ublic policy . . . does not dictate that the parent-child bond be maintained regardless of the cost to the child"). Most significantly, the court concluded that mother was not ready to provide the permanency and stability that C.B. needed, nor would she be ready to do so for an indeterminate period, more likely years than months. While mother had made progress, the court explained, at least since her latest treatment, she certainly was not ready to play an unqualifiedly constructive role in C.B.'s life, or provide the level of emotional support and affection that C.B. needed and deserved from a full-time parent. There is no support for mother's suggestion that the court abdicated its role in evaluating the child's best interests. To

the contrary, the court considered the best-interest factors, weighed the evidence, and concluded that termination of mother's rights—which necessarily included termination of any right to parent-child contact—was warranted.  We find no error.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice