VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      21-AP-202



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JANUARY TERM,   2022

| | |
|---|---|
| In re G.J., Juvenile<br>(G.J., Father\* & M.J., Mother\*) | APPEALED FROM:<br><br>Superior Court, Bennington Unit,<br>Family Division<br>CASE NO. 171-10-19 Bnjv<br>Trial Judge: Kerry Ann McDonald-Cady |

In the above-entitled cause, the Clerk will enter:

Parents appeal the termination of their parental rights to their six-year-old son, G.J.  We affirm.

Parents are married and have one child, G.J., who was born in July 2015.  In October 2019, the State filed a petition alleging that G.J. was a child in need of care or supervision (CHINS) due to parents' possession, use, and sale of heroin, crack cocaine, and marijuana and the presence of drug paraphernalia in the home within G.J.'s reach.  G.J. was removed from the home and custody was transferred to the Department for Children and Families (DCF) pursuant to emergency and temporary care orders.  In July 2020, both parents stipulated that G.J. was CHINS because both parents had substance abuse issues and had failed to consistently engage in treatment programs, and because drug paraphernalia, lack of supervision, and drug culture in the home created an unsafe environment for G.J.

In October 2020, the family division issued a disposition order continuing legal custody with DCF and establishing a permanency goal of reunification with either parent by March 2021.  The court adopted DCF's case plan, which called among other things for both parents to engage in substance abuse and mental health treatment, be sober and on time to visits with G.J., maintain safe and stable housing, refrain from illegal activity, engage in a parenting class, and submit to random urinalysis as requested by DCF.

In March 2021, DCF filed a petition to terminate parental rights.  A hearing was held in August 2021.  Parents initially appeared at the hearing but father appeared to be under the influence and left during a recess.  Mother then indicated that she also planned to leave.  The court advised her that it would continue with the hearing and that if she left, she would not be able to hear the evidence, assist her attorney, or testify, and that it would not grant a new hearing.  Mother indicated that she understood and left the hearing.  The State presented evidence from a DCF worker and G.J.'s paternal aunt, who was G.J.'s foster parent.  The court then made its findings and decision on the record.

The court found by clear and convincing evidence that parents had stagnated in their progress toward addressing the issues that resulted in G.J. entering state custody. Despite having successfully completed in-patient substance abuse treatment twice, in November 2020 and April 2021, mother admitted that she had used heroin and crack cocaine as recently as July and August of 2021, demonstrating the severity of her addiction. Mother had recently engaged in outpatient addiction treatment, but had not yet shown any consistent progress, having missed her first appointment in July 2021. Father also continued to use heroin and cocaine despite having participated in substance abuse treatment since January 2021. In July 2021, mother passed out while on the phone with her case worker, and the case worker called the police to perform a welfare check. When police arrived at the motel where mother and father were living, they observed drugs. After obtaining a search warrant, they discovered four bags of heroin. This resulted in father's arrest for possession of heroin.

Neither parent had engaged in mental health treatment, which the court found was necessary to help them maintain sobriety. At the time of the hearing, they were living in a motel, which the court found was not a safe environment for G.J. due to the presence of other drug users. Mother had pleaded guilty in March 2021 to felony unlawful trespass and sale of a noncontrolled substance and was serving a suspended sentence. Neither parent had engaged in a parenting class, and they had declined to participate in urinalysis when requested by DCF. The court acknowledged that both parents had been sober during visits with G.J. and had consistently attended those visits, which had remained supervised throughout the CHINS proceeding.

The court found that G.J.'s paternal aunt had acted in a parental role toward G.J. since before the CHINS proceeding had started. G.J. looked to her to meet his physical and emotional needs. He was strongly bonded to her and wanted to live with her. The aunt indicated that she viewed G.J. as her son and was willing to adopt him. G.J. had a strong relationship with his aunt's family and was well adjusted to his school and community.

The court assessed the best-interests factors set forth in 33 V.S.A. § 5114(a) and concluded that termination of parental rights was in G.J.'s best interests. In particular, the court concluded that parents would not be able to resume their parental roles for G.J. within a reasonable amount of time due to their ongoing struggles with substance abuse. The court found that G.J. and his parents, particularly father, loved each other and looked forward to visits with each other. However, the parent-child bond was not sufficient to counteract the other factors, which weighed in favor of termination. The court therefore terminated both parents' rights and transferred residual parental rights and responsibilities to DCF without limitation as to adoption. The court concluded the hearing by stating that it hoped that parents would continue to be able to meet with G.J. if his aunt agreed. Parents appealed.

Our review of the family division's order is limited. When the court has applied the correct legal standard, we will uphold its findings unless clearly erroneous and will affirm its conclusions if they are supported by the findings. In re R.W., 2011 VT 124, ¶¶ 15-18, 191 Vt. 108. In reviewing a termination decision, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating . . . parental rights." In re S.B., 174 Vt. 427, 429 (2002).

On appeal, parents argue that the family division incorrectly held that it was barred from denying termination based on an important parent-child relationship, and therefore withheld its discretion on that issue. We disagree with parents' characterization of the court's analysis. The court accurately explained that "it [did] not, necessarily, have to prevent a termination of parental rights and responsibilities based on a bond that the parent has. It has to be more than just the

love. It has to also be the demonstration of being able to safely parent." The court correctly described our case law, which recognizes that the court may consider the strength of the parent-child bond in determining whether termination is an appropriate disposition, In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583, but "does not dictate that the parent-child bond be maintained regardless of the cost to the child." In re M.B., 162 Vt. 229, 238 (1994). The court found that parents and G.J. had a loving bond but determined that their love for each other was not sufficient to overcome the parents' inability to provide for the child's basic safety. The record supports its conclusion. We therefore see no error.

Parents contend that the court could have denied termination and instead imposed a permanent guardianship with aunt, given its recognition that there was an important parent-child bond and its stated hope that aunt would allow them to continue having visitation with G.J. "We have repeatedly rejected the claim, however, that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities." In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593. The court determined that termination of parental rights was in the best interests of the child and its findings are supported by the evidence. Having reached that conclusion, it was not required to consider alternatives to termination. Id.; see also 14 V.S.A. § 2660(b) ("The Family Division of the Superior Court is not required to address and rule out each of the other potential disposition options once it has concluded that termination of parental rights is in a child's best interests."); In re C.B., 2020 VT 80, ¶ 21 (noting that although Legislature recently eliminated statutory preference for adoption over permanent guardianships, "it also made it clear that permanent guardianships were not a preferred disposition option over termination of parental rights and adoption").

Finally, parents argue that the court abused its discretion in transferring residual parental rights to DCF instead of aunt. We conclude that parents lack standing to challenge this aspect of the court's decision. In an appeal from a termination order "[t]he only question presented with respect to parents is whether the court erred in terminating their residual parental rights." In re R.B., 2015 VT 100, ¶ 19, 200 Vt. 45. Any question about G.J.'s placement "has no bearing on whether the court erred in terminating parents' rights and it follows that parents have no standing to challenge the placement decision here." Id.; see also In re T.T., 2005 VT 30, ¶ 8, 178 Vt. 496 (explaining that claims about placement were separate from issue of whether court properly terminated mother's parental rights; mother's legal interest in child was terminated, "and she has no legal basis for challenging the court's ensuing custody order").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice

3