VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.    23-AP-266

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

FEBRUARY TERM,   2024

In re S.S., Juvenile         }    APPEALED FROM:
(B.S., Father\*)                 }
                             }   Superior Court, Chittenden Unit,
                             }   Family Division
                             }   CASE NO. 20-JV-00266
                                       Trial Judge: Thomas Carlson

In the above-entitled cause, the Clerk will enter:

Father appeals from the termination of his rights in daughter S.S., born in May 2008. Mother is deceased. We affirm.

The trial court made the following findings. S.S. and her family are originally from Nepal and now live in Vermont. S.S. lived with father, her adult brother Sa.S., Sa.S's wife, and their children. Sa.S. had been primarily parenting S.S. since S.S. was a toddler. In October 2020, S.S. was taken into the emergency custody of the Department for Children and Families (DCF) based on S.S.'s allegation of physical abuse by Sa.S., her fear of Sa.S., and father's alcohol abuse and inability to care for himself. The State alleged that S.S. was at risk of harm at home due to father's failure to protect her from Sa.S. and her exposure to father's problematic alcohol use. Following a contested hearing, S.S. was declared as a child in need of care or supervision (CHINS) in July 2021. The court found father unable to parent S.S. due to a combination of alcoholism and physical ailments. It further found that Sa.S. verbally abused S.S. and used corporal punishment on her, even with father in the home. S.S. was placed in a foster home, where she remains.

Father is sixty-five years old and suffers from significant memory loss and other physical ailments. Father at one time had a serious drinking problem but had stopped drinking. It was undisputed that father could not care for a minor child. Father needs help in caring for himself and he cannot leave the home without assistance.

The initial case plan indicated that both Sa.S. and father needed to engage in the case plan goals to address safety concerns in the home and promote S.S.'s wellbeing. DCF created a revised plan in August 2021. The court made clear at the November 2021 disposition hearing that Sa.S. was not formally part of the plan, and the plan goal was revised to clearly refer to reunification only with father, and not with father and Sa.S. The court made written changes to the plan at the hearing and provided the parties an opportunity to object to these changes. No

party did so. The court's November 2021 disposition order set a goal of reunification with father by May 2022 or termination of parental rights and adoption. Following the disposition hearing, a parenting capacity study for father was attempted but stopped when father's lack of competency became apparent. Father was later deemed incompetent for purposes of these proceedings and a guardian ad litem (GAL) was appointed for him.

In April 2022, DCF moved to terminate father's rights and, following a May 2023 hearing, the court granted its request. It found that S.S. was thriving in her foster home and her foster mother was prepared to adopt her. S.S.'s GAL supported termination of father's rights as in S.S.'s best interests. At the court's request, the parties briefed the question of whether the court could consider Sa.S.'s assistance at the termination stage of these proceedings. Father argued that if a household was raising a child prior to DCF involvement, the question should be whether the household could resume parenting within a reasonable time. The court found that father offered no legal or statutory support for this assertion. The State cited 33 V.S.A. § 5114, and case law holding that the most important question in termination proceedings is the likelihood the parent can resume or assume parental duties within a reasonable time. See, e.g., In re B.M., 165 Vt. 194, 199 (1996). The court agreed with the State's position. It explained that while there were avenues for family members to be recognized as temporary and then permanent placements for a child in custody due to parental inability to parent, nothing in the statutes or case law supported father's "it-takes-a-household" argument. The limited question before the court was whether father's parental rights should be terminated, not whether S.S. might someday return to her brother's home on some basis she might choose or that some other proceeding might yield.

Turning to the statutory best-interests factors, the court found that S.S. had a lifelong relationship with Sa.S. as a caretaker but the relationship was full of conflict; it included corporal punishment and verbal abuse by Sa.S., which triggered the CHINS petition. S.S. was doing well in her foster home where she had been for almost three years. She had grown and thrived in her foster parent's care, and was adjusted to her new school and community. Father had no prospect of resuming or assuming parental duties, which was the most important statutory factor. Father's role in S.S.'s life remained important but very limited. It was constructive only in the sense of keeping some connection to him and S.S.'s Nepalese heritage, but not to her continued growth and education. In sum, the court concluded that termination of father's rights was clearly in S.S.'s best interests. This appeal followed.

Father argues on appeal that the court erred in finding that Sa.S.'s action steps were stricken from the case plans. He maintains that the inclusion of action steps for Sa.S. in the disposition plan suggested that Sa.S.'s assistance could be considered in evaluating father's ability to parent S.S.

There was no error. The court recognized that there were action steps for Sa.S. in the case plan. It found that "[t]he plan essentially invited [Sa.S.] to seek a more formal role in the proceedings, and originally prescribed certain action steps for him and his wife although they have never been parties to the case nor has he sought to be declared [S.S.'s] de facto parent." At the disposition hearing, however, the court made it clear that the plan contemplated reunification with only father, not Sa.S., and the goal and plan were revised accordingly. Among other changes, the court revised language that had required father to "engage in Easterseals coaching to gain parenting skills so he is able to support [Sa.S.] in parenting S.S." to eliminate any

reference to Sa.S. and to require father to gain the skills necessary to parent S.S. The court observed in its termination decision that "the action steps referring to [Sa.S.] did not appear in the permanency plan filed with the court in October 2022." That statement is supported by the record. The court rejected father's argument that, in ruling on the termination petition, it could consider if the "household" could parent S.S. within a reasonable time. Father offered no legal support for that position below, and does not provide any such support on appeal. The court applied the appropriate standard in considering whether father's rights should be terminated, and its decision is supported by the record.

Father next asserts that the court should have sua sponte deemed Sa.S. to be S.S.'s de facto parent, included a reunification goal for him, and considered him as a permanency option for S.S. Father does not explain how he has standing to raise these arguments on Sa.S.'s behalf, nor did father or Sa.S. raise these arguments below. See Lanphere v. Beede, 141 Vt. 126, 129 (1982) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). In any event, the question for the court was whether termination of father's rights was in S.S.'s best interests. It is well-established that "once the family court applies the [statutory best-interest] criteria . . . and determines that the child's best interests warrant giving the State custody of the child without limitation to adoption, the court need not revisit the permanency hearing options" set forth by statute, "and explain why it is choosing termination of parental rights over other options enumerated therein." In re T.T., 2005 VT 30, ¶ 7, 178 Vt. 496 (mem.).

Finally, father argues that the court erred in not including Sa.S. as a party in this case. As with the argument above, father fails to show that he has standing to raise this argument on Sa.S.'s behalf, or that this argument was raised below. We find no error in the trial court's decision.

Affirmed.


BY THE COURT:


Paul L. Reiber, Chief Justice


Karen R. Carroll, Associate Justice


William D. Cohen, Associate Justice


3